GENARO A. ORIGEL-CANDIDO, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 28256

April 9, 1998                           956 P.2d 1378

*Michael Specchio,* Public Defender, *John Reese Petty,* Chief Deputy Public Defender, Washoe County, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; Richard A. Gammick, District Attorney, and *Terrence P. McCarthy,* Deputy District Attorney, Washoe County, for Respondent.

## OPINION

By the Court, YOUNG, J.:

On December 12, 1994, Tonya Ismeralda Cisneros

("Cisneros") invited a few friends to her house for a small party. Although not invited by Cisneros, appellant Genaro A. Origel-Candido ("Origel-Candido") and some of his friends attended this party as well. Some of the teenagers were drinking, and rival gang members were present. Origel-Candido and his friends were members of the "Maravilla" gang, while others attending the party were part of the "Inglewood" gang.

At one point, a party-goer wrote the letters "MRV," a graffiti monogram for the Maravilla gang, on a piece of paper. Guadalupe Dominguez ("Dominguez"), who was also at Cisneros' house, crossed out the "MRV." Soon thereafter, Origel-Candido entered the room and demanded to know who had defaced the Maravilla logo. Dominguez identified herself, and a brief fight broke out.[1] Origel-Candido and his friends were then obliged to leave the house.

Origel-Candido phoned Cisneros' house later that day and told Cisneros that he and his friends were going to return to her house to retaliate for the defacement of the Maravilla logo. At about 1:30 p.m., Origel-Candido and a number of his friends drove to the house. Several shots were fired at the house and from within the house. It is not clear exactly who was shooting from where; however, Judith Lightfoot ("Lightfoot"), who witnessed the shooting from the house next door, testified that she was certain she had seen Origel-Candido firing into Cisneros' house. Another eyewitness, Carol Freeman ("Freeman"), stated that she had seen someone who "looked very similar to the [defendant]" firing into Cisneros' house.

Origel-Candido was arrested and charged with discharging a firearm at or into a house and with discharging a firearm from a motor vehicle. The prosecution also sought a sentence enhancement under NRS 193.168, which imposes an additional penalty for felonies committed in furtherance of criminal gang activity. At trial, there was limited testimony as to whether the Maravillas were a criminal gang for purposes of NRS 193.168. The State gang expert provided a definition of a criminal gang. When asked if the Maravillas fit within that definition, the expert replied "yes" without elaboration.

The jury convicted Origel-Candido of shooting into Cisneros' house and found that he had done so in furtherance of criminal gang objectives. The jury acquitted Origel-Candido of firing a gun from a moving vehicle. The district court sentenced Origel-Candido to four years in prison for the shooting and an additional

---

[1]The State's gang expert testified that street gangs take these logos seriously. The expert further testified that the defacement of such a logo, if seen by a member of the gang, would be likely to incite an altercation.

four years pursuant to the gang enhancement statute. Origel-Candido appeals the conviction and the sentence enhancement.

## DISCUSSION

Origel-Candido argues that the State did not adduce evidence sufficient to support the jury's verdict. Specifically, he challenges the credibility of the witnesses who identified him as the shooter. First, Freeman testified only that Origel-Candido looked "similar" to the defendant. Second, while Lightfoot testified that the shooter was wearing a black coat and black pants, Origel-Candido testified that he was wearing jeans, a white turtleneck, and a blue shirt.

The relevant inquiry is " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " Koza v. State, 100 Nev. 245, 250, 681 P.2d 44, 47 (1984) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

The evidence was sufficient to support the jury's finding that Origel-Candido was the shooter. Lightfoot unequivocally identified Origel-Candido as one of the shooters. Freeman testified that although she "could not identify [the shooter] 100 percent . . . he looks very similar to [Origel-Candido]." The only evidence contradicting this identification is Origel-Candido's own testimony as to what he was wearing that day.

"[I]t is the jury's function, not that of the court, to assess the weight of the evidence and determine the credibility of witnesses." McNair v. State, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992). A rational factfinder could have attributed greater weight to the testimony of Lightfoot and Freeman than that of Origel-Candido, who was obviously interested in the outcome. Therefore, we conclude that there was sufficient evidence presented upon which the jury could have convicted Origel-Candido of discharging a firearm into a dwelling.

Origel-Candido next argues that insufficient evidence was adduced at trial to support a jury finding that the Maravillas are a "criminal gang" as defined by the sentence enhancement statute. Because of this, he posits, the statute should not have been applied. We conclude that this contention has merit.

"The Due Process clause of the United States Constitution protects an accused against conviction except on proof beyond a reasonable doubt of *every fact* necessary to constitute the crime with which he is charged." Carl v. State, 100 Nev. 164, 165, 678 P.2d 669, 669 (1984) (emphasis added). In addition, NRS 193.168(3)(b) provides that the gang enhancement statute applies only when the trier of fact finds, beyond a reasonable doubt, that the primary offense was committed knowingly for the benefit of a criminal gang.

NRS 193.168(6) defines "criminal gang." One of the requirements of this statute is that the gang "[h]as as one of its common activities engaging in criminal activity punishable as a felony, other than the conduct which constitutes the primary offense." NRS 193.168(6)(c).

Thus, the plain language of the gang enhancement statute, as well as the Due Process clause, clearly requires that in order for the statute to apply here, the State must prove beyond a reasonable doubt that the Maravilla gang, as one of its common activities, engages in felonies.

During direct examination of Officer Mohammad Rafaqat ("Rafaqat"), the State's gang expert, the State addressed this issue twice. First, Rafaqat was asked to define a criminal gang. He testified that "what separates [a criminal gang] from a group of kids that play basketball . . . [is] criminal activity, that is the defining point, the criminal activity." Later, Rafaqat provided this testimony:

> [STATE]: Is the Maravilla gang a criminal gang as defined in Nevada?
> [RAFAQAT]: Yes, it is.
> [STATE]: Are you familiar with some felony crimes that the Maravilla gang has—or members of the Maravilla gang has [sic] committed?
> [DEFENSE COUNSEL]: Objection, your honor. . . . That question, one, is irrelevant and, two, is prejudicial.
> THE COURT: [Sustained.]
> [STATE]: Detective Rafaqat, do you know of your personal knowledge of any felony crimes which were committed by Maravilla gang members prior to December 12th, 1994?
> [RAFAQAT]: Yes.
> [STATE]: And were those felony crimes committed in the course of or in furtherance of the activities of the Maravilla Gang?
> [RAFAQAT]: Yes.

Rafaqat's testimony simply does not address the element of

whether Maravilla members commit felonies as a *common activity*. Rafaqat did not testify as to an approximate number of Maravilla gang members who committed felonies. He did not testify that incoming members of the gang were exhorted to felonious acts by senior members. The fact that individual members committed felony crimes which benefitted the gang does not lead necessarily to the conclusion that felonious action is a common denominator of the gang. Likewise, just because certain members of a hypothetical group play musical instruments, it does not follow that the group is an orchestra.

Furthermore, Rafaqat's testimony as to the definition of a criminal gang, followed by his statement that the Maravilla gang was such a gang, does not constitute sufficient evidence. This testimony is akin to a police officer testifying as to some of the statutory elements of murder and then stating the legal conclusion that the defendant murdered the victim, without proving each and every one of those statutory elements. Rafaqat's conclusory testimony is simply not proof of every factual element required to find that the Maravilla gang was a criminal gang.

Therefore, we conclude that the evidence at trial, even when viewed in the light most favorable to the prosecution, does not provide a rational factfinder with sufficient evidence that the members of the Maravilla gang commit felonies as one of their common activities.

## CONCLUSION

We affirm Origel-Candido's judgment of conviction for discharging a firearm into a house. However, because virtually no evidence was produced at trial which shows that the Maravilla gang is a criminal gang as defined by statute, we reverse the application of the sentence enhancement.

SPRINGER, C. J., and SHEARING, J., concur.

ROSE, J., with whom MAUPIN, J., joins, concurring and dissenting:

I concur in the majority opinion affirming Origel-Candido's judgment of conviction for discharging a firearm into a house, but I disagree with its holding that no evidence was produced at trial which shows that the Maravilla gang was a criminal gang as defined by statute. I believe there was sufficient evidence presented at trial to support the jury's finding that the Maravilla gang was a criminal gang as defined by NRS 193.168(6).

Nevada's criminal gang enhancement statute provides for an equal and consecutive sentence if the underlying felony was "committed knowingly for the benefit of, at the direction of, or in affiliation with, a criminal gang, with the specific intent to pro-

mote, further or assist the activities of the criminal gang." NRS 193.168(1). Pursuant to NRS 193.168(6), a criminal gang is defined as:

> 6.   . . . any combination of persons, organized formally or informally, so constructed that the organization will continue its operation even if individual members enter or leave the organization, which:
>
> (a) Has a common name or identifying symbol;
>
> (b) Has particular conduct, status and customs indicative of it; and
>
> (c) Has as one of its common activities engaging in criminal activity punishable as a felony, other than the conduct which constitutes the primary offense.

We have held that, "[t]he Due Process clause of the United States Constitution protects an accused against conviction except on proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." Carl v. State, 100 Nev. 164, 165, 678 P.2d 669, 669 (1984). NRS 193.168(3)(b) also requires that the gang enhancement be proven beyond a reasonable doubt. Origel-Candido asserts that no evidence established that the Maravilla gang engaged in criminal activity as one of its common activities, and the majority holds that insufficient evidence was presented on this point. I disagree.

The evidence presented at trial established that the Maravilla gang was a "street gang" that employed graffiti monograms, and engaged in territorial control and retaliatory activity—characteristics of a criminal gang. The State's gang expert also testified that he had personal knowledge that felonies were committed by the Maravilla gang members prior to the firearm being discharged into Cisneros' house, and that those felony crimes were committed in the course of or in furtherance of the activities of the Maravilla gang. This evidence was uncontroverted. I believe this evidence permits a jury to find, as the jury did in this case, beyond a reasonable doubt, that the requirements of NRS 193.168(6)(c) had been met.

Accordingly, I would affirm the penalty assessed pursuant to the gang enhancement statute, as well as the underlying conviction.