RAMON DINKHA ADAM, Appellant, *v.*
THE STATE OF NEVADA, Respondent.

No. 54121

September 22, 2011                           261 P.3d 1063

[Rehearing denied November 18, 2011]
[En banc reconsideration denied February 24, 2012]

*Philip J. Kohn*, Public Defender, and *Jason B. Trauth* and
*Audrey M. Conway*, Deputy Public Defenders, Clark County, for
Appellant.

*Catherine Cortez Masto*, Attorney General, Carson City; *David
J. Roger*, District Attorney, *Nancy A. Becker* and *Steven S. Owens*,
Chief Deputy District Attorneys, and *Sonia V. Jimenez*, Deputy
District Attorney, Clark County, for Respondent.

Before SAITTA, C.J., HARDESTY and PARRAGUIRRE, JJ.

# OPINION

By the Court, HARDESTY, J.:

At his trial for trafficking in a controlled substance, appellant Ramon Dinkha Adam sought a jury instruction on the procuring agent defense, which generally provides that if a defendant is an agent of the purchaser, then the defendant should only be held as culpable as the purchaser. The district court rejected the instruction, even though there was some evidence, and Nevada caselaw, that supported giving the instruction. In this appeal, we revisit that prior precedent holding that the procuring agent defense is applicable to a charge of trafficking in a controlled substance. After reviewing the trafficking statute and our prior caselaw, and looking at other jurisdictions that have addressed the issue, however, we conclude that the procuring agent defense is inapplicable to trafficking charges, regardless of the theory the defendant is charged under, *i.e.*, sale, manufacture, delivery, or actual or constructive possession. NRS 453.3385. We therefore affirm Adam's conviction, and overrule prior precedent that is inconsistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

A confidential informant told Las Vegas Metropolitan Police Detective Mike Wilson that Adam had the ability to procure drugs. The informant then introduced Detective Wilson, undercover at the time, to Adam, who thereafter became the target of further undercover police investigation. Detective Wilson stayed in contact with Adam over the course of four months and the two built a friendship. At some point during the four-month investigation, Detective Wilson claimed that Adam told him he had "connects" to purchase illegal drugs. According to Detective Wilson, some time after Adam made that comment, Detective Wilson asked Adam if he could procure methamphetamine. Adam agreed to help Detective Wilson.

Adam arranged to meet the suppliers at a tattoo shop in Las Vegas.[1] He and Detective Wilson waited for them in the tattoo shop

---

[1]Adam's first attempt to help Detective Wilson was unsuccessful. He met with his suppliers outside of the tattoo shop, but he allegedly told the suppli-

but eventually exited the shop and waited in Adam's car. When the suppliers arrived, one of them approached Adam's car where Adam was sitting in the driver's seat and Detective Wilson was in the passenger seat. The man handed Adam what appeared to be methamphetamine through the driver's window, which Adam placed on a scale he already had in his car. After weighing the methamphetamine, Adam informed the man that the weight was not correct. The man went back to his truck and returned with more methamphetamine, which Adam added to the scale and said the amount was now correct at 15 grams. Detective Wilson previously gave Adam $500 for the methamphetamine, and he observed Adam hand the money to the supplier. Adam then handed the methamphetamine to Detective Wilson.

Adam was charged with trafficking in a controlled substance in violation of NRS 453.3385 for knowingly or intentionally having actual or constructive possession of 12.64 grams of methamphetamine.[2] At the close of evidence, Adam requested that the district court instruct the jury on the procuring agent defense. The district court denied Adam's request, indicating that Adam's request was untimely and Adam had not presented any evidence to support the instruction and finding that Adam did not act as a procuring agent because he initiated the sale when he mentioned that he had "connects" to get drugs. At the conclusion of trial, the jury found Adam guilty of trafficking in a controlled substance, and he was sentenced to a maximum of 48 months in prison.

## DISCUSSION

Adam asserts that the district court erred when it refused to instruct the jury on the procuring agent defense. The State argues that the district court properly declined to give the instruction and urges this court to revisit prior decisions applying the procuring agent defense to a charge of trafficking based on possession[3] because they are inconsistent with the purpose of the procuring agent defense. After reviewing our previous caselaw, the trafficking statutes, and the purpose of the procuring agent defense, we agree with the State.

---

ers that the methamphetamine was of poor quality and to return with a higher quality product.

[2]Initially, Adam was also charged with and found guilty of transport of a controlled substance in violation of NRS 453.321, but the charge was later dismissed and is not at issue in this appeal.

[3]Under NRS 453.3385, a person can be guilty of trafficking in five distinct ways: (1) selling, (2) manufacturing, or (3) delivering a controlled substance, (4) bringing a controlled substance into this state, or (5) knowingly or intentionally being in actual or constructive possession of a controlled substance.

*Nevada's caselaw regarding the procuring agent defense*

In 1971, this court recognized the procuring agent defense, which was first announced in *United States v. Sawyer*, 210 F.2d 169 (3d Cir. 1954). *See Roy v. State*, 87 Nev. 517, 489 P.2d 1158 (1971). Under this defense, if the jury finds that the defendant was only acting on behalf of a buyer when procuring drugs, then the defendant could not be convicted of selling drugs. *Sawyer*, 210 F.2d at 170; *Roy*, 87 Nev. at 519, 489 P.2d at 1159. In *Buckley v. State*, 95 Nev. 602, 604, 600 P.2d 227, 228 (1979), we held that the procuring agent defense is not applicable when the defendant is charged with the crime of possession.[4]

Several years after the trafficking statutes were adopted, this court considered the procuring agent defense's applicability to charges of trafficking based on possession and held that "[e]ven when possession for sale is not specifically alleged, the [procuring agent] instruction may be required where possession was clearly incidental to a contemplated sales transaction initiated by an informant." *Hillis v. State*, 103 Nev. 531, 535, 746 P.2d 1092, 1095 (1987). We have since relied on *Hillis* for the general proposition that "the procuring agent defense *is* applicable to a trafficking case where the State charges trafficking on a theory of possession, but the facts reveal a sale was contemplated." *Love v. State*, 111 Nev. 545, 548-49, 893 P.2d 376, 378 (1995).

*Overturning Nevada precedent*

"[U]nder the doctrine of *stare decisis*, [this court] will not overturn [precedent] absent compelling reasons for so doing. Mere disagreement does not suffice." *Secretary of State v. Burk*, 124 Nev. 579, 597, 188 P.3d 1112, 1124 (2008) (footnotes omitted). Those compelling reasons must be " ' "weighty and conclusive." ' " *Id.* (quoting *Kapp v. Kapp*, 31 Nev. 70, 73, 99 P. 1077, 1078 (1909)). However, "[t]he doctrine of *stare decisis* must not be so narrowly pursued that the . . . law is forever encased in a straight jacket." *Rupert v. Stienne*, 90 Nev. 397, 400, 528 P.2d 1013, 1015 (1974).

The weighty and conclusive reason the State offers for overturning our prior precedent is, essentially, that the Uniform Controlled Substances Act, which Nevada based its trafficking statutes

---

[4]The defendant in *Buckley* was convicted of possession of a controlled substance pursuant to NRS 453.336. 95 Nev. 602, 603, 600 P.2d 227, 228 (1979). The trafficking statutes were not adopted until 1983. *See* 1983 Nev. Stat., ch. 111, §§ 2-4, at 287-88.

on, was designed to make all actors in the illicit drug deal equally culpable when a trafficking quantity of a controlled substance is involved. The State goes on to argue that that purpose would be defeated if this court allowed the use of the procuring agent defense to defend against a charge of trafficking. We agree.

The principle behind the procuring agent defense is that a person who acts solely as a procuring agent for the purchaser of drugs is a principal to the purchase, not the sale, and thus, should be held liable only to the same extent as the purchaser. Because the purchaser cannot be held liable for selling the drugs, neither can the purchaser's agent. 25 Am. Jur. 2d *Drugs and Controlled Substances* § 185 (2004). The purchaser typically is liable for possession of the drugs and, therefore, that is the extent of his procuring agent's liability as well—which explains why this court summarily held in *Buckley* that the procuring agent defense does not apply to the crime of possession.[5]

The same point is implicit in the seminal procuring agent case, wherein the Third Circuit Court of Appeals concluded its discussion recognizing the defense with the observation that "[t]he government having elected to charge the defendant with the crime of sale *rather than illegal possession*, the jury should have been alerted to the legal limitations of the sale concept in relation to the circumstances of this case." *Sawyer*, 210 F.2d at 170 (emphasis added); *accord People v. Hall*, 622 P.2d 571, 572-73 (Colo. Ct. App. 1980) (explaining that procuring agent defense negates an essential element of the sales offense—the sale itself—and therefore the defense is not applicable in a prosecution for mere possession); *State v. Osburn*, 505 P.2d 742, 746 (Kan. 1973) ("Where possession of a substance, such as a narcotic, is unlawful a procuring agent for a purchaser may be convicted of unlawful possession thereof . . . ."). Thus, while the procuring agent defense protects the purchaser's agent from a conviction for a charge that involves the sale of a controlled substance, it does not protect the purchaser's agent from a conviction for a charge of possession of the controlled substance.

Although this court implicitly recognized this conceptual limitation on the procuring agent defense with the holding in *Buckley*,

---

[5]The case cited as support in *Buckley* provides a more detailed explanation focusing on the fact that the procuring agent defense "[c]onceptually . . . does not fit within the ambit of mere possession, as distinguished from possession with intent to sell, since the former contains no element pertaining to or any exception in respect to an agent or person possessing on behalf of another." *People v. Sierra*, 379 N.E.2d 196, 199 (N.Y. 1978), *cited in Buckley*, 95 Nev. at 604, 600 P.2d at 228.

95 Nev. at 604, 600 P.2d at 228, that "the agency defense is inapplicable to the crime of possession," no mention was made of that limitation or *Buckley* when this court first considered whether the procuring agent defense applies to a charge of trafficking in a controlled substance in *Hillis*. The *Hillis* court held that the procuring agent defense is applicable to a trafficking charge that is based on a theory of possession if the facts reveal that the "possession was clearly incidental to a contemplated sales transaction." 103 Nev. at 535, 746 P.2d at 1095. The court in *Hillis* asserted that the "principle enunciated in *Roy*[, 87 Nev. 517, 489 P.2d 1158,] logically extends to the charge of possession for the purpose of sale." *Id.* That logical extension makes sense: the procuring agent defense applies to a charge of *possession for the purpose of sale* because the defense negates an element of the offense—the intent to sell the controlled substance, *see* NRS 453.337—the same as it negates the sales element in a charge of selling a controlled substance. But that logical extension does not explain the *Hillis* court's next conclusion: "Even when possession for sale is not specifically alleged, the instruction may be required where possession was clearly incidental to a contemplated sales transaction initiated by an informant." 103 Nev. at 535, 746 P.2d at 1095. That conclusion was not supported by any authority. More importantly, the *Hillis* court's ultimate conclusion suffers from at least two fatal flaws.

The first flaw in *Hillis*'s conclusion is that it does not comport with the principle behind the defense: that the purchaser's agent should be held liable only to the same extent as the purchaser. Although the purchaser clearly is liable for a charge of trafficking based on actual or constructive possession of a trafficking quantity of a controlled substance, *Hillis* would absolve the purchaser's agent of that same liability. This is in direct conflict with the trafficking statutes, which make *everyone* who has any part in the transaction—from the person who manufactured the drugs to the end purchaser and everyone in between—guilty of the same offense (trafficking) and subject to the same potential penalty when a trafficking quantity of a controlled substance is involved. *See, e.g.*, NRS 453.3385. In contrast, when a trafficking quantity is not involved, the sale offenses typically carry harsher penalties than the possession offense. *Compare* NRS 453.336 (providing that first and second offense of simple possession is category E felony), *with* NRS 453.321 (providing that sale of controlled substance is category B felony), *and* NRS 453.338 (providing that first and second offense of possession for the purpose of sale is category D felony). It therefore makes a difference in that context whether the

defendant is charged with a sales offense or simple possession. As a result, the procuring agent defense has a place when the transaction involves a nontrafficking amount—it ensures that the purchaser's agent has only the same liability as the purchaser rather than the greater liability imposed on the seller. But because the trafficking statutes do away with any distinction between seller and buyer for all practical purposes, the statutes already achieve the result that would otherwise be achieved by the procuring agent defense, and, thus, there is no place for the defense when the charge is trafficking.

The second flaw in *Hillis*'s conclusion is that it disregards how the procuring agent defense works as a defense. The procuring agent defense works as a defense to a charge of selling a controlled substance because it negates an element of the offense—the sale. When the charge is simple possession, *see* NRS 453.336, or trafficking based on possession, *see* NRS 453.3385-.3395, the defense does not negate an element of the offense, and therefore it does not work as a defense to those charges. The court seemingly recognized this problem in *Love v. State*, 111 Nev. 545, 893 P.2d 376 (1995), in the context of deciding who has the burden of proof regarding the procuring agent defense. There, the court rejected the State's argument that the instructions adequately informed the jury regarding the State's burden of proof on the procuring agent defense because the instructions gave the impression that the elements of trafficking and the procuring agent defense were two separate issues: "This is a result of the State having charged Love with trafficking based purely on possession: *the procuring agent defense does not negate any element of the trafficking offense on which the jury was instructed.*" *Id.* at 550, 893 P.2d at 379 (emphasis added). Despite that observation, the *Love* court did not question the idea that the State had the burden of proof on the defense, which is only the case if the defense negates an element of the offense. *See id.* at 549-51, 893 P.2d at 378-79. *Love* thus is internally inconsistent—it indicates that the State had the burden of proof on the procuring agent defense because the defense negates an element of the charged offense, but because the State charged the defendant with trafficking based solely on possession, there was no element of the offense for the procuring agent defense to negate.

Based on the above, we overrule our prior cases insofar as they have allowed a defendant to use the procuring agent defense to defend against a charge of trafficking in a controlled substance based on a possession theory. Accordingly, we conclude that the district court reached the correct result, albeit for the wrong reasons,

when it refused to instruct the jury on the procuring agent defense, *see Wyatt v. State*, 86 Nev. 294, 298, 468 P.2d 338, 341 (1970), and we affirm the judgment of conviction.[6]

SAITTA, C.J., and PARRAGUIRRE, J., concur.

---

[6]Adam also argues that cumulative error warrants reversal and that the district court erred by (1) denying his motion to discover the identity of the confidential informant, (2) allowing a police detective that filmed the drug transaction to narrate that film during trial, (3) refusing to allow Adam to argue in closing argument that the drug suppliers were the confidential informants, and (4) failing to instruct the jury on lesser included offenses. We conclude that these arguments are without merit and require no further discussion. Adam's final argument is that there is not sufficient evidence to support a guilty verdict, but after reviewing the evidence in the light most favorable to the prosecution, we conclude that there is sufficient evidence to support the verdict. *See Origel-Candido v. State*, 114 Nev. 378, 381, 956 P.2d 1378, 1380 (1998).