# IN THE SUPREME COURT OF THE STATE OF NEVADA

OMAR LAMAR BRISBANE,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 67936

FILED

AUG 10 2016



## ORDER OF AFFIRMANCE

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of one count of second-degree kidnapping with the use of a deadly weapon and two counts of sexual assault with the use of a deadly weapon. Eighth Judicial District Court, Clark County; Ronald J. Israel, Judge.

On May 15, 2014, M.D. stopped by Dotty's, a bar and casino. When M.D. walked in, she noticed appellant Omar Brisbane seated at a gaming machine and, after a clerk told her who Brisbane was, went over to say hello. M.D. had previously met Brisbane during an encounter in which M.D.'s friend promised M.D. methamphetamines if she gave Brisbane a ride. Brisbane asked M.D. if she would give him a ride home, and M.D. agreed.

M.D. testified that she tried to leave after pulling into Brisbane's driveway but, instead of getting out of the car, Brisbane pulled out a gun and pointed it at her. He ordered her into his residence and guided her up the stairs and then into a bedroom. M.D. lost track of the gun, but she never noticed Brisbane drop it. Brisbane ordered M.D. to sit on the edge of the mattress and then had her lie down. M.D. further testified that she repeatedly told Brisbane to stop, but he warned her that he would knock her out if she got loud.

16-24808

Brisbane then proceeded to take off M.D.'s pants and began to perform oral sex on her. M.D. testified that Brisbane also placed at least one finger inside her vagina and that Brisbane forced her to smoke methamphetamine during the act. She noticed that Brisbane had his shirt off and could tell that he had words tattooed on the side and front of his torso. M.D. made several attempts to get Brisbane to stop and to get away, but all her efforts failed.

M.D. testified that Brisbane was in need of a car, and she convinced him that she knew someone who worked at an auto dealership that would sell him a car for cheap. She told Brisbane that this person would be off of work soon so they should hurry in order to find him before he left the dealership. Once they were outside of Brisbane's residence and close to the car, she told Brisbane that he had forgotten something in the house. As Brisbane went back inside to retrieve the item, M.D. got into her car and sped off.

M.D. called her mother and then 911. After completing her 911 call, M.D. met with North Las Vegas Police and led them back to Brisbane's house. Later that evening, M.D. arrived at University Medical Center where a sexual assault nurse examiner conducted a full forensic sexual assault examination, and Detective Mark Hoyt interviewed M.D.

Based on his investigation and the information obtained from M.D., Detective Hoyt obtained a search warrant for Brisbane's residence. After attempting to locate Brisbane for over a period of several days, Detective Hoyt requested an arrest warrant. Brisbane was arrested on that warrant approximately one month later.

On December 2, 2014, Brisbane was charged by way of indictment as follows: Count 1—first-degree kidnapping with the use of a

deadly weapon (Category A felony—NRS 200.310; NRS 200.320; NRS 193.165); Counts 2 and 3—sexual assault with the use of a deadly weapon (Category A felony—NRS 200.364; NRS 200.366; NRS 193.165).

On February 2, 2015, a jury trial convened and lasted three days. The jury returned a verdict finding Brisbane guilty of one count of second-degree kidnapping with the use of a deadly weapon and two counts of sexual assault with the use of a deadly weapon. Brisbane was adjudicated guilty under the habitual criminal statute—NRS 207.010. The judgment of conviction was filed.

Brisbane raises the following issues on appeal: (1) whether sufficient evidence supports his conviction, (2) whether the convictions of two counts of sexual assault with the use of a deadly weapon are redundant, (3) whether the district court abused its discretion by precluding admission of M.D.'s prior misdemeanor, and (4) whether the district court abused its discretion by adjudicating Brisbane under the habitual criminal statute.

*There was sufficient evidence to support Brisbane's conviction*

Brisbane argues that the State's entire case rests upon M.D.'s credibility, as there were no eyewitnesses to the alleged kidnapping and sexual assault. Brisbane further argues that M.D. was not a credible witness and, therefore, there was insufficient evidence to support his conviction.

In reviewing the evidence supporting a jury's verdict, "[the question] is not whether this court is convinced of the defendant's guilt beyond a reasonable doubt, but whether the jury, acting reasonably, could be convinced to that certitude by evidence it had a right to accept." *Edwards v. State*, 90 Nev. 255, 258-59, 524 P.2d 328, 331 (1974). "The relevant inquiry is whether, after viewing the evidence in the light most

favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Origel-Candido v. State*, 114 Nev. 378, 381, 956 P.2d 1378, 1380 (1998) (internal quotations omitted). This court has stated that "the uncorroborated testimony of a victim, without more, is sufficient to uphold a [sexual assault] conviction." *Gaxiola v. State*, 121 Nev. 638, 648, 119 P.3d 1225, 1232 (2005). This is true, so long as the victim testifies "with *some* particularity regarding the incident." *LaPierre v. State*, 108 Nev. 528, 531, 836 P.2d 56, 58 (1992).

*Second-degree kidnapping with the use of a deadly weapon*

In relevant part, NRS 200.310(2) states:

> A person who willfully and without authority of law seizes, inveigles, takes, carries away or kidnaps another person with the intent to keep the person secretly imprisoned within the State, . . . or in any manner held to service or detained against the person's will, is guilty of kidnapping in the second degree which is a category B felony.

NRS 193.165(1), dealing with crimes involving the use of a deadly weapon, further states:

> [A]ny person who uses a firearm or other deadly weapon or a weapon containing or capable of emitting tear gas, whether or not its possession is permitted by NRS 202.375, in the commission of a crime shall, in addition to the term of imprisonment prescribed by statute for the crime, be punished by imprisonment in the state prison for a minimum term of not less than 1 year and a maximum term of not more than 20 years.

M.D. testified at trial that she was forced into Brisbane's home at gunpoint, that upon entry she was lead straight to the upstairs bedroom, and that Brisbane proceeded to commit two acts of sexual

SUPREME COURT
OF
NEVADA

(O) 1947A

4

assault against her will. M.D. further testified that the gun that Brisbane used was a small handgun that was either silver or gold in color and had a white handle. Although the gun was never found, Brisbane's ex-girlfriend, Julia Mendoza, testified that Brisbane owned a gun that fit the description given by M.D. Because witness testimony at trial indicated that a reasonable jury could have found that the essential elements of second-degree kidnapping were met, we hold that there was sufficient evidence to support Brisbane's conviction. *Origel-Candido*, 114 Nev. at 381, 956 P.2d at 1380.

*Sexual assault*

NRS 200.366(1), dealing with sexual assault, states:

> A person who subjects another person to sexual penetration . . . against the will of the victim or under conditions in which the perpetrator knows or should know that the victim is mentally or physically incapable of resisting or understanding the nature of his or her conduct, is guilty of sexual assault.

M.D. provided with particularity a description of the cunnilingus and digital penetration and the fact that neither was consensual, as well as a description of the location where the incident occurred and of the tattoos on Brisbane's torso. M.D.'s testimony regarding the cunnilingus and digital penetration was consistent with what M.D. told the sexual assault nurse examiner during the examination. M.D.'s testimony was also consistent with Detective Hoyt's and Mendoza's testimony regarding the description of the location. Mendoza's testimony also corroborated M.D.'s testimony regarding tattoos on Brisbane's torso. Finally, there was testimony supporting the notion that Brisbane engaged in furtive behavior after the incident by eluding police for a month after the incident occurred. Therefore, M.D.'s testimony

contains sufficient particularity and corroboration for the jury to have found, beyond a reasonable doubt, the essential elements of sexual assault. *LaPierre*, 108 Nev. at 531, 836 P.2d at 58.

*Sexual assault with the use of a deadly weapon*

M.D.'s testimony also indicates that, although she did not see Brisbane holding the gun during the sexual assault, she did not see him drop the gun after he initially pointed it at her. Thus, M.D. believed that Brisbane was performing digital penetration with one hand and holding the gun with the other hand.

This court has indicated that it does not matter whether a victim actually sees a deadly weapon, so long as the victim believes that there was a deadly weapon and that it could be used upon the victim. *See Bartle v. Sheriff*, 92 Nev. 459, 460, 552 P.2d 1099, 1099 (1976).

Therefore, because M.D. testified that Brisbane had initially pointed a gun at her, she reasonably believed that he had the gun on his person during the sexual assault and could have used it upon her. Accordingly, there was sufficient evidence for the jury to have found the essential elements of sexual assault with the use of a deadly weapon pursuant to NRS 200.366 and NRS 193.165.

*Brisbane's convictions of two counts of sexual assault with the use of a deadly weapon are not redundant*

This court reviews legal questions de novo. *Thompson v. State*, 125 Nev. 807, 811, 221 P.3d 708, 711 (2009). This court has held that separate and distinct acts of sexual assault committed as part of a single criminal encounter may be charged as separate counts. *Wicker v. State*, 95 Nev. 804, 806, 603 P.2d 265, 266-67 (1979); *see also Deeds v. State*, 97 Nev. 216, 217, 626 P.2d 271, 272 (1981). NRS 200.366(1) states that "[a] person who subjects another person to sexual

penetration . . . against the will of the victim . . . is guilty of sexual assault." NRS 200.364(5) defines "sexual penetration" as "cunnilingus, fellatio, or any intrusion, *however slight*, of any part of a person's body or any object manipulated or inserted by a person into the genital or anal openings of the body of another, including sexual intercourse in its ordinary meaning." (Emphasis added.)

Here, Brisbane was indicted on two charges of sexual assault. The first charge was for performing cunnilingus on M.D. The second charge was for digital penetration. During trial, M.D. testified that Brisbane's tongue penetrated her while he performed oral sex and that at one point his fingers also penetrated her vagina.

Therefore, we hold that there were two separate acts of penetration.[1] Even if the digital penetration was slight, that is all that is required under the statutes to constitute sexual assault. NRS 200.364(5); NRS 200.366(1).

*Whether the district court abused its discretion by precluding admission of M.D.'s prior misdemeanor conviction*

"The scope and extent of cross-examination is largely within the sound discretion of the trial court and in the absence of abuse of

---

[1]Brisbane cites to *Crowley v. State*, 120 Nev. 30, 34, 83 P.3d 282, 285 (2004), and *Ebeling v. State*, 120 Nev. 401, 403, 404, 91 P.3d 599, 600, 601 (2004), for the proposition that incidental touching as part of a sexual act does not constitute a separate and distinct act. Brisbane's argument lacks merit. Contrary to *Crowley*, where the defendant *touched* the victim's penis before performing fellatio on the victim, 120 Nev. at 34, 83 P.3d at 285, and *Ebeling*, where the defendant *touched* the victim's buttocks prior to inserting his penis into the victim's anus, 120 Nev. at 403, 404, 91 P.3d at 600, 601, each of Brisbane's actions constitutes a separate act of *penetration* under NRS 200.364(5).

discretion a reversal will not be granted." *Azbill v. State*, 88 Nev. 240, 246, 495 P.2d 1064, 1068 (1972).

*The district court did not abuse its discretion by precluding admission of M.D.'s prior misdemeanor*

The district court "retains wide discretion to limit cross-examination based on considerations such as harassment, prejudice, confusion of the issues, and relevancy." *Kaczmarek v. State*, 120 Nev. 314, 335, 91 P.3d 16, 31 (2004). Furthermore, a witness can generally only be impeached with an appropriate felony conviction, not a misdemeanor conviction. *See* NRS 50.095; *see also Sheriff v. Hawkins*, 104 Nev. 70, 75, 752 P.2d 769, 773 (1988).

Here, after M.D.'s testimony revealed that she had used methamphetamines the day of the incident, Brisbane asked M.D. whether she had told Detective Hoyt that she had used methamphetamines on that day. M.D. stated that she did not recall. After reviewing a transcript of her interview, M.D. admitted that she had in fact told Detective Hoyt that she had not used methamphetamines on the day of the incident.

On redirect, the prosecution addressed this issue by asking M.D. why she had not told Detective Hoyt about her use of methamphetamines that day:

> Q. Were you afraid of you yourself getting in trouble?
>
> A. Yes. I would say yes.
>
> Q. Why?
>
> A. *Because I've had no history whatsoever, never been to jail,* so, you know, I mean, it was just -- it's officers and I didn't want them -- you know, I didn't want to get in trouble.

(Emphasis added.)

Brisbane requested a bench conference to address the fact that in spite of M.D. having at least one misdemeanor conviction for drug possession dating back to 2014, she testified that she omitted the use of methamphetamines during the police interview because she had "no history whatsoever, never been to jail." Therefore, Brisbane wanted permission to inquire about M.D.'s criminal past.

On recross, the district court limited Brisbane to asking M.D. what she meant when she testified that she had "no history." When asked about that, M.D. responded, "I said I've never been to jail, I've never been in trouble. I don't know if I used the word history or not, but I've never been to jail."

Brisbane requested another bench conference to argue that he should be entitled to also ask M.D. about what she meant by her testimony that she had never been in trouble. The district court rejected the request, stating, "No. We're done. . . . [Y]ou asked the [question], what did you mean by history, she said: I've never been to jail. So you got your answer."

Therefore, the district court allowed Brisbane an opportunity to ask M.D. for clarification of her earlier statement to rebut any false impression that may have resulted from her testimony. Satisfied that M.D. meant that she had not been to jail, the district court properly limited cross-examination on this issue. *See* NRS 50.095; *Hawkins*, 104 Nev. at 75, 752 P.2d at 773.

Accordingly, the district court did not abuse its discretion by precluding the admission of M.D.'s prior misdemeanor.

*Whether the district court abused its discretion by adjudicating Brisbane under the habitual criminal statute*

This court reviews a district court's decision to impose habitual criminal status for an abuse of discretion. *Clark v. State*, 109 Nev. 426, 428, 851 P.2d 426, 427 (1993).

*The district court did not abuse its discretion by adjudicating Brisbane under the habitual criminal statute*

A sentencing court must exercise discretion and weigh the appropriate factors before adjudicating a person as a habitual criminal. *Hughes v. State*, 116 Nev. 327, 333, 996 P.2d 890, 893-94 (2000). "[A]s long as the record as a whole indicates that the sentencing court was not operating under a misconception of the law regarding the discretionary nature of a habitual criminal adjudication and that the court exercised its discretion, the sentencing court has met its obligation under Nevada law." *Id.*; *see also Clark*, 109 Nev. at 429, 851 P.2d at 428.

Here, during the sentencing hearing, the State provided the district court with four certified copies of Brisbane's prior felony convictions. The certified copies included judgments of conviction for (1) possession of a controlled substance in 1999, (2) aggravated assault with a deadly weapon in 2003, (3) possession of a firearm by an ex-felon in 2005, and (4) larceny in 2010. The State and the defense both argued for and against adjudicating Brisbane as a habitual criminal, indicating that they knew that application of the habitual criminal statute was at the district court's discretion. Furthermore, the district court's statements during the sentencing hearing reflect that application of the habitual criminal statute was based on several factors, including the facts of the case and Brisbane's prior criminal history. Thus, the record suggests that the district court appropriately weighed the arguments for and against adjudicating

Brisbane as a habitual criminal and appropriately exercised its discretion in doing so. *See Hughes*, 116 Nev. at 333, 996 P.2d at 893-94; *see also Clark*, 109 Nev. at 429, 851 P.2d at 428. Accordingly, the district court did not abuse its discretion by adjudicating Brisbane under the habitual criminal statute.

Therefore, we

ORDER the judgment of the district court AFFIRMED.

_____, J.
Hardesty

_____, J.
Saitta

_____, J.
Pickering

cc:     Hon. Ronald J. Israel, District Judge
        The Law Office of Mark Chaksupa, Esq.
        Attorney General/Carson City
        Clark County District Attorney
        Eighth District Court Clerk