140 Nev., Advance Opinion 82

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| THE STATE OF NEVADA,<br>Appellant,<br>vs.<br>RICHARD JOHN DEVRIES,<br>Respondent. | No. 86647 |
| | **FILED**<br><br>DEC 2 6 2024<br><br>ELIZABETH A. BRC<br>CLERK OF SUPREME<br>BY<br>DEPUTY CLERK |
| THE STATE OF NEVADA,<br>Appellant,<br>vs.<br>RUSSELL D. SMITH,<br>Respondent. | No. 86648 |
| THE STATE OF NEVADA,<br>Appellant,<br>vs.<br>STEPHEN MICHAEL ALO,<br>Respondent. | No. 86649 |
| THE STATE OF NEVADA,<br>Appellant,<br>vs.<br>CAMERON TREICH,<br>Respondent. | No. 86650 |
| THE STATE OF NEVADA,<br>Appellant,<br>vs.<br>TAYLOR MICHAEL RODRIGUEZ,<br>Respondent. | No. 86651 |

SUPREME COURT
OF
NEVADA

(O) 1947A

24-49809

| | |
|---|---|
| THE STATE OF NEVADA,<br>Appellant,<br>vs.<br>AARON CHUN,<br>Respondent. | No. 86652 |
| THE STATE OF NEVADA,<br>Appellant,<br>vs.<br>RAYANN FILLADO MOLLASGO,<br>Respondent. | No. 86653 |

Consolidated appeals from district court orders granting in part pretrial petitions for a writ of habeas corpus. Eighth Judicial District Court, Clark County; Tierra Danielle Jones, Judge.

*Reversed and remanded.*

Aaron D. Ford, Attorney General, Carson City; Steven B. Wolfson, District Attorney, and Taleen R. Pandukht, Chief Deputy District Attorney, Clark County,
for Appellant.

Chesnoff & Schonfeld and Richard A. Schonfeld, Las Vegas,
for Respondent Richard John Devries.

Pitaro & Fumo, Chtd., and Thomas F. Pitaro, Las Vegas,
for Respondents Russell D. Smith and Stephen Michael Alo.

Hendron Law Group LLC and Lance J. Hendron, Las Vegas,
for Respondent Cameron Treich.

Law Offices of Joseph P. Reiff and Joseph P. Reiff, Las Vegas,
for Respondent Taylor Michael Rodriguez.

(O) 1947A

Law Office of John V. Spilotro and John V. Spilotro, Las Vegas,
for Respondent Aaron Chun.

Legal Resource Group and T. Augustus Claus, Henderson,
for Respondent Rayann Fallado Mollasgo.

---

BEFORE THE SUPREME COURT, EN BANC.

*OPINION*

By the Court, PICKERING, J.:

Respondents, all members of the Hells Angels Motorcycle Club, are charged with numerous offenses arising from a shooting in which they allegedly ambushed and fired at members of rival Vagos Motorcycle Club. The State appeals from district court orders partially granting respondents' pretrial habeas corpus petitions and dismissing the criminal gang sentencing enhancement from the superseding indictment. We conclude that this was error because the State presented at least slight or marginal evidence to support a reasonable inference that Hells Angels members commonly engage in felony-level violence directed at rival motorcycle clubs, such that the group constitutes a criminal gang. Thus, the State presented sufficient evidence to the grand jury to support a probable cause finding that Hells Angels is a criminal gang under NRS 193.168. Because the district court substantially erred in dismissing the gang enhancement, we reverse and remand.

*FACTS AND PROCEDURAL HISTORY*

On May 29, 2022, motorcyclists gathered at the Hoover Dam for an organized ride in recognition of Memorial Day. Shortly after attendees



dispersed, multiple motorcyclists were shot while riding in formation on Interstate 11 in Henderson. The State alleges that respondents Richard Devries, Russell Smith, Stephen Alo, Cameron Treich, Taylor Rodriguez, Aaron Chun, and Rayann Mollasgo—members of the Las Vegas charter of the Hells Angels Motorcycle Club—laid in wait on a highway on-ramp and ambushed rival Vagos Motorcycle Club members as the Vagos group returned to Las Vegas from the Memorial Day ride. After entering the back of the Vagos formation on their own motorcycles, the Hells Angels riders allegedly kicked at the Vagos to break up the group and then fired on individual riders. Seven people were injured.

During grand jury proceedings, the State called Officer John Woosnam to testify as an expert witness. Woosnam is a Las Vegas Metropolitan Police Department officer who previously specialized in the investigation of "outlaw motorcycle gangs." Woosnam testified on Hells Angels' organizational structure, policies, and history, including significant rivalries. Woosnam stated that when a group of Hells Angels members encounters a rival club, officers or full members may issue an order to attack. All Hells Angels members present are expected to fight if in a position to do so. In support of this premise, Woosnam provided a timeline of specific confrontations between Hells Angels and Vagos in Nevada and neighboring states. This testimony included accounts of Hells Angels members or associates engaging in two stabbings (one fatal), numerous shootings, firing a gun in a crowded casino, a severe beating, a pistol whipping, and similar confrontations. Woosnam also detailed 30 additional federal and state felony convictions of Hells Angels members, many involving violence against other motorcycle clubs. Some of this testimony was accompanied by corresponding court records, admitted as grand jury

exhibits. The grand jury returned a true bill, and the State charged respondents by superseding indictment with numerous offenses, including 37 counts alleging that respondents committed the primary offense with the intent to promote, further, or assist a criminal gang.

Respondents filed pretrial habeas petitions challenging the superseding indictment on multiple grounds, including that insufficient evidence supported probable cause as to the gang enhancement. After oral argument, the district court found that the State failed to establish by slight or marginal evidence that, as an organization, Hells Angels commonly engages in criminal activity and thus qualifies as a criminal gang. Accordingly, the district court partially granted respondents' petitions and dismissed the gang enhancement from all counts. The State appealed.

## DISCUSSION

A district court's decision to grant a pretrial habeas petition for lack of probable cause will stand "[a]bsent a showing of substantial error." *Sheriff v. Gillock*, 112 Nev. 213, 215, 912 P.2d 274, 275 (1996) (quoting *Sheriff v. Provenza*, 97 Nev. 346, 347, 630 P.2d 265, 265 (1981) (alteration in original)). The substantial error standard is considered in the context of the State's burden to present sufficient evidence to support the grand jury's probable cause determination. *Sheriff v. Miley*, 99 Nev. 377, 379, 663 P.2d 343, 344 (1983). A finding of probable cause "may be based on slight, even 'marginal' evidence because it does not involve a determination of the guilt or innocence of an accused." *Sheriff v. Hodes*, 96 Nev. 184, 186, 606 P.2d 178, 180 (1980) (quoting *Perkins v. Sheriff*, 92 Nev. 180, 181, 547 P.2d 312, 312 (1976)). "To commit an accused for trial, the State is not required to negate all inferences which might explain [the accused's] conduct, but only to present enough evidence to support a reasonable inference that the accused committed the offense." *Kinsey v. Sheriff*, 87 Nev. 361, 363, 487

SUPREME COURT
OF
NEVADA

5

(O) 1947A

P.2d 340, 341 (1971). If the State meets its burden to show probable cause that the defendant committed the charged crime, it is substantial error for a district court to grant a pretrial habeas petition. *See Sheriff v. Steward,* 109 Nev. 831, 832, 837, 858 P.2d 48, 49, 52 (1993). Although deference has been accorded a district court's determination of factual sufficiency in this context, *see Provenza,* 97 Nev. at 347, 630 P.2d at 265, to the extent a district court's decision involves a question of law, this court reviews that decision de novo, *Sheriff v. Marcus,* 116 Nev. 188, 192, 995 P.2d 1016, 1018 (2000).

*Criminal gang enhancement*

Nevada's criminal gang enhancement statute provides for an additional prison sentence, to run consecutively to the sentence for the underlying offense, for any person convicted of a felony "committed knowingly for the benefit of, at the direction of, or in affiliation with, a criminal gang, with the specific intent to promote, further or assist the activities of the criminal gang." NRS 193.168(1). Expert testimony to show gang conduct, status, and customs is admissible in a proceeding to determine the existence of a criminal gang. NRS 193.168(7). To establish a group is a criminal gang, the State must show that one of the group's "common activities" is "engaging in criminal activity punishable as a felony," apart from the conduct alleged in the charged offense. NRS 193.168(8)(c). That individual members commit crimes to benefit the group is not enough to prove common criminal activity; rather, the State must show that "felonious action is a common denominator of the gang." *Origel-Candido v. State,* 114 Nev. 378, 383, 956 P.2d 1378, 1381 (1998).

*Evidence of conduct of nonlocal Hells Angels members was relevant to whether Hells Angels engages in common felonious activity*

Respondents urge us to disregard the evidence of criminal conduct presented to the grand jury because it does not represent the

activities of the Las Vegas Hells Angels charter, which had only eight members at the time of the alleged shooting. Respondents note that the State did not offer evidence that any member of the Las Vegas charter had a history of felony convictions or documented violence towards rival clubs. But the language of NRS 193.168 does not set geographic boundaries when defining a gang. *See* NRS 193.168(8) (defining a "criminal gang" to include "*any* combination of persons, organized formally or informally, so constructed that the organization will continue its operation even if individual members enter or leave the organization" (emphasis added)); *State v. Lucero*, 127 Nev. 92, 95, 249 P.3d 1226, 1228 (2011) (stating that this court will not look beyond a statute's plain text to determine its meaning when the text is clear). And we have never held that evidence offered to prove the gang enhancement must be limited to a particular subgroup. Among the other jurisdictions with comparable statutes, most allow nonlocal evidence when determining whether a local subgroup is a gang so long as there are sufficient ties between the subgroup and the larger organization. *See, e.g., State v. Shackleford*, 673 S.W.3d 243, 253 (Tenn. 2023) (finding no indication in state statute "of an intent to narrowly define a gang by its subsets"); *Chavez v. State*, 837 S.E.2d 766, 772 (Ga. 2020) (concluding that the statutory definition of a gang does not require proof by evidence limited to a particular state or geographic region); *People v. Prunty*, 355 P.3d 480, 483 (Cal. 2015) (holding that the prosecution may establish gang enhancement with evidence of predicate crimes committed by nonlocal subsets where there is evidence of "associational or organizational connection"); *cf. United States v. Rios*, 830 F.3d 403, 415 (6th Cir. 2016) (finding expert testimony about characteristics of national Latin Kings gang to be relevant and reliable in RICO prosecution involving



subgroup). *But see Taybron v. Commonwealth*, 703 S.E.2d 270, 276 (Va. Ct. App. 2011) (holding that "loose[ ] affiliation" with a larger organization is insufficient to establish the existence of a criminal street gang based on nonlocal predicate criminal acts).

Here, Woosnam's testimony provided evidence of a hierarchical relationship and coordination of activities between the world, national, and regional levels of the Hells Angels organization and local charters. Woosnam testified about the symbols and customs shared by Hells Angels members, accompanied by photographic evidence specific to Las Vegas. While Woosnam characterized charters as "semi-autonomous," in that they may develop their own bylaws, he noted that charter policies must not contradict Hells Angels rules at higher levels. Additionally, Woosnam testified that each charter is required to send a representative to monthly regional meetings to discuss rules, dues, and events and report charter information up the chain of command for higher-level oversight. Charters can also be required to raise money or pay fees to benefit other charters. This testimony was supported by records showing the Las Vegas charter's participation in fundraising efforts for Arizona and California Hells Angels members facing federal charges arising from the deaths of three people in Laughlin, Nevada. Finally, Woosnam testified that formal borders are insignificant with respect to Hells Angels rivalries, describing multiple instances of retaliative violence occurring in one state following conflict in a neighboring state. We conclude that through this evidence the State established a sufficient link between the Las Vegas charter and the larger Hells Angels organization to warrant the grand jury's consideration of the conduct of nonlocal members.



*Evidence of criminal activity was not too remote to support probable cause that Hells Angels was a gang at the time of the shooting*

Respondents further assert that the evidence presented to the grand jury was too remote in time to sustain a probable cause finding regarding the activities of present-day Hells Angels. Specifically, respondents note that the most recent judgment of conviction in evidence documented conduct ending in 2012. But the evidence before the grand jury was not limited to judgments of conviction. Woosnam testified to an incident occurring on March 17, 2019, in which Hells Angels support club members shot three Vagos members inside a hotel in downtown Las Vegas.[1] Additionally, the State offered the testimony of Detective Benjamin MacDonnell, who investigated criminal activities of Las Vegas motorcycle clubs at the time of the shooting and for the nearly six years immediately prior. MacDonnell described becoming familiar with Hells Angels members during surveillance, traffic stops, and calls for service and discussing similar experiences with investigators in other states while occupying this position. This testimony indicates that the group has not recently changed the nature of its activities. Consequently, respondents have not shown that the evidence before the grand jury was too remote to inform the present determination.

*The State presented sufficient evidence to support probable cause that Hells Angels is a criminal gang*

Having concluded that the evidence presented to the grand jury was relevant, we turn to whether it was sufficient to support a probable cause finding that Hells Angels commonly engages in felonious activity,

---

[1]Woosnam testified that a support club is a smaller motorcycle club that exists with the permission of and acts at the discretion of a more prominent motorcycle club in a particular area.

meeting the statutory definition of a gang. Woosnam's testimony repeatedly referenced what he characterized as Hells Angels' violent culture, particularly towards rival clubs. Woosnam explained that participating in violence enhances a Hells Angels member's status and that being awarded a patch commemorating a significant act of violence (such as the "Filthy Few") is one of the highest honors a member can receive. Notably, law enforcement witnesses testified that a search of the Las Vegas charter's clubhouse after the alleged shooting revealed a flag displaying the Filthy Few, hung prominently in the group's boardroom. This is consistent with the pattern of violent conduct illustrated by Woosnam's timeline and corresponding court records. From this and the other evidence summarized above, we conclude that the State presented at least slight or marginal evidence that a wide swath of Hells Angels members have engaged in felony-level violence toward rival clubs. *See* NRS 193.168(8)(c); *Hodes*, 96 Nev. at 186, 606 P.2d at 180; *see also Robertson v. Sheriff*, 85 Nev. 681, 682-83, 462 P.2d 528, 529 (1969) (holding that the State need not produce to the grand jury the quantum of proof required to establish the guilt of the accused beyond a reasonable doubt). Furthermore, the grand jury could reasonably infer that this violent behavior was not simply attributable to the impulses of individual members; rather, it is perpetuated and celebrated as central to Hells Angels' customs and culture. *See Origel-Candido*, 114 Nev. at 382-83, 956 P.2d at 1381 (describing characteristics of conduct carried out as part of a gang's common activities). The district court therefore substantially erred in granting the pretrial habeas petitions based on a finding that the State failed to show probable cause that Hells Angels qualifies as a criminal gang under NRS 193.168(8).



*Gang membership is not a prerequisite for gang enhancement*

Mollasgo also argues that the gang enhancement does not apply to him because the evidence before the grand jury established that he was a "hang-around" and had not yet attained the status of a full Hells Angels member when the alleged shooting occurred. But NRS 193.168 does not require the State to prove that a defendant is a member of a criminal gang. Rather, it allows the sentence enhancement for "any person" convicted of a felony committed *"for the benefit of, at the direction of,* or in affiliation with, a criminal gang." NRS 193.168(1) (emphasis added). Therefore, Mollasgo's argument that the State presented insufficient evidence of his Hells Angels membership lacks merit.

## *CONCLUSION*

We conclude that the expert testimony of Woosnam and court records documenting Hell Angels members' nationwide criminal convictions were sufficient to support a reasonable inference that Hells Angels commonly engages in felonious activity and therefore qualifies as a criminal gang under NRS 193.168(8). Because the State presented sufficient evidence to the grand jury to establish probable cause as to the criminal gang enhancement, we further conclude that the district court committed substantial error when it partially granted respondents' pretrial habeas petitions and dismissed the gang enhancement from all counts to which it was charged in the superseding indictment. Accordingly, we reverse the

district court's orders as to the gang enhancement and remand these matters to the district court for proceedings consistent with this opinion.

_____Pickering_____, J.
Pickering

We concur:

_____Cadish_____, C.J.
Cadish

_____Stiglich_____, J.
Stiglich

_____Herndon_____, J.
Herndon

_____Lee_____, J.
Lee

_____Parraguirre_____, J.
Parraguirre

_____Bell_____, J.
Bell