**133 Nev., Advance Opinion 63**

# IN THE SUPREME COURT OF THE STATE OF NEVADA

LACY L. THOMAS,
Petitioner,
vs.
THE EIGHTH JUDICIAL DISTRICT
COURT OF THE STATE OF NEVADA,
IN AND FOR THE COUNTY OF
CLARK; AND THE HONORABLE
MICHAEL VILLANI, DISTRICT
JUDGE,
Respondents,
    and
THE STATE OF NEVADA,
Real Party in Interest.

No. 69074

FILED

SEP 14 2017

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
  CHIEF DEPUTY CLERK

Original petition for extraordinary relief challenging a district court order denying a motion to dismiss an indictment, or alternatively, to order the district court to rule upon petitioner's motion to dismiss the indictment as deficient.

*Petition granted.*

Law Office of Franny Forsman and Franny A. Forsman; Daniel J. Albregts, Ltd., and Daniel J. Albregts, Las Vegas,
for Petitioner.

Adam Paul Laxalt, Attorney General, Carson City; Steven B. Wolfson, District Attorney, Steven S. Owens, Chief Deputy District Attorney, and Michael V. Staudaher and Ofelia L. Monje, Deputy District Attorneys, Clark County,
for Real Party in Interest.

---

BEFORE THE COURT EN BANC.[1]

## OPINION

By the Court, STIGLICH, J.:

In *Oregon v. Kennedy*, 456 U.S. 667 (1982), the United States Supreme Court held that when a mistrial is declared at a defendant's request, the Double Jeopardy Clause of the United States Constitution bars reprosecution only in those instances where a defendant demonstrates that the prosecutor intentionally acted to "goad" the defendant to move for a mistrial. Nevada adopted the *Kennedy* standard in *Melchor-Gloria v. State*, 99 Nev. 174, 660 P.2d 109 (1983).

In the years following *Kennedy*, a number of states have observed the difficulty of proving a prosecutor's specific intent to provoke a mistrial, and adopted broader standards. Having reviewed these decisions, this court agrees that the *Kennedy* standard is unduly narrow. Therefore, the court concludes that pursuant to the protections of Article 1, Section 8 of the Nevada Constitution, when a defendant requests a mistrial, jeopardy will also attach when a prosecutor intentionally

---

[1]The Honorable Michael L. Douglas, Justice, voluntarily recused himself from participation in the decision of this matter.

 

proceeds in a course of egregious and improper conduct that causes prejudice to the defendant which cannot be cured by means short of a mistrial.

## FACTS AND PROCEDURAL HISTORY

In 2008, the State of Nevada filed an indictment against Lacy L. Thomas, the former chief executive officer of University Medical Center (UMC), charging five counts of theft and five counts of official misconduct. The charges related to contracts entered into between Thomas and five separate entities, which the State asserts were controlled by friends or associates of Thomas. The State contended that the terms of the five contracts were so grossly unfavorable to UMC that each contract represented an act of theft. One of these theft charges related to a contract negotiated by Thomas with Superior Consulting (ACS).

Thomas initially proceeded to trial in 2010. On approximately the fifth day of trial, an attorney for ACS, in a conversation with Thomas's attorneys outside of court, referred to a binder of documents that he believed to be exculpatory with respect to ACS. ACS's attorney indicated he had previously provided these documents to the police detectives investigating ACS and Thomas. These documents had never been provided to Thomas.[2]

On the basis of this late disclosure, Thomas moved for a mistrial. The district court granted the motion on the tenth day of trial.

---

[2]The defense did not receive the exculpatory documents until the conclusion of the seventh day of trial. On the ninth day of trial, the defense alerted the trial court to this late disclosure. To the extent the dissent suggests sandbagging by the defense, this is not borne out by the record.

 

After a cursory review, the district court found that, at a minimum, the documents provided substantial material relevant to the cross-examination of several key witnesses. Given that 13 witnesses had already testified over nine days of trial, the district court determined that a mistrial was necessary.

Following the mistrial, Thomas filed a motion to dismiss pursuant to the Double Jeopardy Clause, and a motion to dismiss the indictment for vagueness and failure to state a claim with sufficient specificity. The district court granted the second motion with respect to all counts, finding that the State had failed to identify its allegations against Thomas with sufficient specificity. The district court did not rule on Thomas's claims that the underlying statutes were unconstitutionally vague. On appeal, this court upheld the dismissal of the theft charges related to ACS, but found that the indictment provided Thomas with sufficient notice of the remaining charges. *State v. Thomas*, Docket No. 58833 (Order Affirming in Part, Reversing in Part and Remanding, Sept. 26, 2013).

Upon remand to the district court, Thomas renewed his motion to dismiss for double jeopardy. He also filed a renewed motion regarding vagueness, arguing that the district court had not reached these claims in its prior order.

Following an evidentiary hearing, the district court made a conclusive finding that the documents at issue were exculpatory in nature, as they tended to demonstrate that ACS had performed work pursuant to its contract with UMC. The district court also found that the documents had been provided to the district attorney's office by police detectives. Nonetheless, the court denied Thomas's double jeopardy motion, finding

that the State had not intentionally withheld the documents from Thomas. The district court further noted that the documents withheld related to conduct by ACS. Because the theft charge was dismissed with respect to ACS, the district court determined that there was no "carryover" of double jeopardy to any remaining counts. The district court concluded that it lacked authority to consider Thomas's vagueness motion, as the parties had argued the issue of constitutional vagueness in the first appeal to this court.

Thomas now petitions for extraordinary relief, asking this court to consider (1) whether double jeopardy bars reprosecution, (2) whether double jeopardy has attached to all charged counts, and (3) whether the district court had authority to rule on his renewed motion to dismiss for unconstitutional vagueness.

*We exercise our discretion to consider Thomas's petition*

The decision to consider a writ of mandamus lies within the sole discretion of this court. *Smith v. Eighth Judicial Dist. Court*, 107 Nev. 674, 677, 818 P.2d 849, 851 (1991). "A writ of mandamus is available to compel the performance of an act that the law requires . . . or to control an arbitrary or capricious exercise of discretion." *Int'l Game Tech., Inc. v. Second Judicial Dist. Court*, 124 Nev. 193, 197, 179 P.3d 556, 558 (2008); NRS 34.160. "An arbitrary or capricious exercise of discretion is one founded on prejudice or preference rather than on reason, or contrary to the evidence or established rules of law." *State v. Eighth Judicial Dist. Court (Armstrong)*, 127 Nev. 927, 931-32, 267 P.3d 777, 780 (2011) (internal quotation marks omitted) (citation omitted). "[W]here there is [no] plain, speedy and adequate remedy in the ordinary course of law," extraordinary relief may be available. NRS 34.170; *Smith*, 107 Nev. at

677, 818 P.2d at 851. "While an appeal generally constitutes an adequate and speedy remedy precluding writ relief, we have, nonetheless, exercised our discretion to intervene 'under circumstances of urgency or strong necessity, or when an important issue of law needs clarification and sound judicial economy and administration favor the granting of the petition.'" *Cote H. v. Eighth Judicial Dist. Court*, 124 Nev. 36, 39, 175 P.3d 906, 908 (2008) (quoting *State v. Second Judicial Dist. Court (Ducharm)*, 118 Nev. 609, 614, 55 P.3d 420, 423 (2002)).

The double jeopardy issues presented by this case are important issues of law that require clarification. Further, given Thomas's argument that double jeopardy bars reprosecution, sound judicial economy supports consideration of these issues before a second jury trial. Therefore, we exercise our discretion to intervene in these circumstances by way of extraordinary writ.[3]

*Double jeopardy applies in this case*

Thomas first argues that his renewed prosecution by the State following the initial mistrial violates the Double Jeopardy Clause of the United States and Nevada Constitutions. This presents a question of law that this court reviews de novo. *Grupo Famsa v. Eighth Judicial Dist. Court*, 132 Nev., Adv. Op. 29, 371 P.3d 1048, 1050 (2016). However, this court "will not disturb [the] district court's findings of fact unless th[ose] [findings] are clearly erroneous and not based on substantial evidence."

---

[3]We note that this court generally reviews questions related to double jeopardy by way of a writ of prohibition. *See Glover v. Eighth Judicial Dist. Court*, 125 Nev. 691, 701, 220 P.3d 684, 692 (2009).

*All Star Bail Bonds, Inc. v. Eighth Judicial Dist. Court*, 130 Nev., Adv. Op. 45, 326 P.3d 1107, 1109 (2014) (internal quotation marks omitted).

Generally, a state may not put a defendant in jeopardy twice for the same offense. U.S. Const. amend. V; Nev. Const. art. 1, § 8. As observed by the United States Supreme Court, a fundamental purpose of the bar against double jeopardy is to ensure that

> the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Green v. United States*, 355 U.S. 184, 187-88 (1957). Given the purpose of protecting against potential abuses by the state, in analyzing whether double jeopardy bars reprosecution after mistrial, "both the United States Supreme Court and this court have made a distinction between those cases in which the *prosecution* moves for mistrial and those in which the *defense* moves for mistrial." *Taylor v. State*, 109 Nev. 849, 861, 858 P.2d 843, 851 (1993) (Shearing, J., concurring in part and dissenting in part); *see also Rudin v. State*, 120 Nev. 121, 142-43, 86 P.3d 572, 586 (2004).

*Double jeopardy following the State's request for mistrial*

In cases where a mistrial is declared at the request of the prosecutor, the concern that the state may pursue a mistrial for its own advantage is strong. Therefore, in these instances, a court must examine (1) whether the declaration of a mistrial was dictated by "manifest necessity," and (2) "in the presence of manifest necessity, whether the prosecutor is responsible for the circumstances which necessitated declaration of a mistrial." *Hylton v. Second Judicial Dist. Court*, 103 Nev.

418, 422-23, 743 P.2d 622, 625 (1987); *see also Illinois v. Somerville*, 410 U.S. 458, 463 (1973) (discussing the "manifest necessity" standard). The state may retry a defendant only after establishing both manifest necessity, and that the prosecutor was not "in some way responsible" for the mistrial. *Hylton*, 103 Nev. at 424, 743 P.2d at 626 (internal quotation marks omitted).

*Double Jeopardy following a defendant's request for mistrial*

Conversely, a defendant's motion for, or consent to, a mistrial generally removes any double jeopardy bar to reprosecution. *Oregon v. Kennedy*, 456 U.S. 667, 672 (1982). As noted by the United States Supreme Court in *Kennedy*, when "the defendant himself has elected to terminate the proceedings against him, the 'manifest necessity' standard has no place in the application of the Double Jeopardy Clause." *Id.* Nonetheless, the Court delineated a narrow exception, holding that in those circumstances where the prosecutor intentionally provokes or "goad[s]" the defendant into moving for a mistrial, a defendant may raise double jeopardy as a defense to subsequent reprosecution. *Id.* at 673-74.

This court adopted the *Kennedy* standard in *Melchor-Gloria v. State*, determining that to bar reprosecution under the Double Jeopardy Clause, a defendant must demonstrate intent by the state to provoke a mistrial. 99 Nev. 174, 178, 660 P.2d 109, 112 (1983). In that case, the court noted that "prosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion, does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause." *Id.* This court again applied the *Kennedy* standard in *Collier v. State*, concluding that even though the prosecutor's remarks leading to mistrial were "egregious," double jeopardy did not bar reprosecution

because the defendant failed to prove that "the prosecution was disposed to seek a mistrial for its advantage." 103 Nev. 563, 566, 747 P.2d 225, 227 (1987).[4]

*Criticism of the Kennedy standard*

As observed by Justice Stevens in his concurring opinion in *Kennedy*, "[i]t is almost inconceivable that a defendant could prove that the prosecutor's deliberate misconduct was motivated by an intent to provoke a mistrial instead of an intent simply to prejudice the defendant." 456 U.S. at 688 (Stevens, J., concurring). Further, by limiting the protections of the Double Jeopardy Clause to the narrow circumstances delineated in *Kennedy*, the purposes of double jeopardy protection are not fully realized. The New Mexico Supreme Court noted that "[t]he object of constitutional double-jeopardy protections is not to punish disreputable prosecutors. The purpose, rather, is to protect the defendant's interests in having the prosecution completed by the original tribunal before whom the trial was commenced." *State v. Breit*, 930 P.2d 792, 800 (N.M. 1996). Notably, whether dismissal results from goading or other intentional misconduct, "the burden of a second trial is not attributable to the

---

[4]In this case, both in arguments before the district court and in the petition to this court, Thomas argued that his claim of double jeopardy should be analyzed under the "manifest necessity" standard set forth in *Hylton*. This is incorrect. Unlike *Hylton*, we note that Thomas, not the State, requested the mistrial.

Ultimately, the district court's written order did not apply *Hylton*, but stated simply that the prosecutor did not intentionally withhold the documents. Under the standard set forth in *Kennedy*, this finding indicates that double jeopardy would not bar reprosecution under the United States Constitution.

SUPREME COURT
OF
NEVADA

(O) 1947A

9

defendant's preference for a new trial over completing trial infected by an error. Rather, it results from the state's readiness, though perhaps not calculated intent, to force the defendant to such a choice." *State v. Kennedy*, 666 P.2d 1316, 1326 (Or. 1983).

Given similar concerns, a number of courts have noted the difficulty in proving a prosecutor's specific intent to provoke a mistrial, and adopted approaches pursuant to their respective state constitutions that encompass other intentional or willful prosecutorial misconduct. *See, e.g., People v. Batts*, 68 P.3d 357, 360 (Cal. 2003) (observing that the *Kennedy* standard "has been widely viewed as unduly narrow and as not fully protective of the interest that the [D]ouble [J]eopardy [C]lause was intended to safeguard"); *Breit*, 930 P.2d at 803 (holding that double jeopardy attaches when an official intends to provoke a mistrial, or acts in "willful disregard" of the possibility of a mistrial); *State v. Kennedy*, 666 P.2d 1316, 1326 (Or. 1983) (extending double jeopardy protections to instances where the prosecutor "either intends or is indifferent to the resulting mistrial or reversal"); *Commonwealth v. Smith*, 615 A.2d 321, 325 (Pa. 1992) (concluding that in addition to the goading discussed in *Kennedy*, double jeopardy also prohibits retrial "when the conduct of the prosecutor is intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial"); *see also State v. Rogan*, 984 P.2d 1231, 1249 (Haw. 1999).[5] Indeed, the only state to have attempted adoption of a

---

[5]While not presented with the appropriate factual circumstances to expand the *Kennedy* standard, courts in both Minnesota and Washington have recognized arguments that the *Kennedy* standard may be unduly narrow. *State v. Fuller*, 374 N.W.2d 722, 726 (Minn. 1985) (acknowledging that a state constitution may provide greater double jeopardy protections

*continued on next page . . .*

broader double jeopardy standard and then reversed its approach is Texas. *See Bauder v. Texas*, 921 S.W.2d 696, 699 (Tex. Crim. App. 1996), *overruled by Ex parte Lewis*, 219 S.W.3d 335, 337 (Tex. Crim. App. 2007). We have reviewed the unique circumstances attendant to the *Bauder* and *Lewis* line of cases and find this authority unpersuasive.[6]

The difficulties inherent in the *Kennedy* standard are discussed at length in *Pool v. Superior Court*, where the Arizona Supreme Court noted that under *Kennedy*, proving specific intent to provoke mistrial "must necessarily involve a subjective inquiry and is too difficult to determine." 677 P.2d 261, 271 (Ariz. 1984). Therefore, in addition to

---

*. . . continued*

than the federal constitution); *State v. Hopson*, 778 P.2d 1014, 1019 (Wash. 1989) (extensively discussing Oregon's alternative approach to double jeopardy after *Kennedy*, but concluding that under the facts before the court, retrial was not barred under either approach). Similarly, the Michigan Court of Appeals adopted a wider double jeopardy standard, *People v. Dawson*, 397 N.W.2d 277, 282 (Mich. App. 1988), but the State subsequently conceded that the prosecutor had engaged in goading. *People v. Dawson*, 427 N.W.2d 886, 897 (Mich. 1988). Given this concession, the Michigan Supreme Court declined to consider the adoption of a broader standard. *Id.*

[6]The dissent points to the *Lewis* decision in Texas as an example of the alleged dangers of expanding the *Kennedy* standard. Interestingly, a compelling factor driving the *Lewis* court's decision to depart from Texas's earlier adoption of a wider double jeopardy standard appears to be a change in the makeup of the Texas Court of Criminal Appeals. As observed by the dissent in *Lewis*, "[*Bauder*] was not such a manifestly erroneous holding that we can justify overruling it just because there is a majority of the Court presently willing to do so." *Lewis*, 219 S.W.3d at 380 (Price, Meyers, and Holcomb, JJ., dissenting).



those instances where a prosecutor intentionally attempts to "goad" a defendant into moving for a mistrial, the court further concluded that double jeopardy would attach in those instances where the guarantees of Arizona's Double Jeopardy Clause "would be impaired by a prosecutor's intentional, improper conduct." *Id.*

*New standard for double jeopardy following a defendant's successful motion for mistrial*

Having reviewed *Pool*, as well as other state court decisions discussing the rigidity of the *Kennedy* standard, this court agrees that the *Kennedy* approach is unduly narrow.[7] As stated in *Kennedy*, intentional conduct by the state to "goad" the defendant into requesting a mistrial certainly triggers the protections of the Double Jeopardy Clause. However, for the reasons discussed above, the protections of Nevada's Double Jeopardy Clause are no less implicated when a prosecutor intentionally engages in egregious misconduct for the purposes of securing a conviction. Therefore, this court finds that in addition to the conduct described in *Kennedy*, the protections of Article 1, Section 8 of the Nevada Constitution also attach to those instances when a prosecutor intentionally proceeds in a course of egregious and improper conduct that

---

[7]We recognize that "under the doctrine of stare decisis, this court will not overturn precedent absent compelling reasons for so doing." *Adam v. State*, 127 Nev. 601, 604, 261 P.3d 1063, 1065 (2011) (internal quotation marks omitted). Nonetheless, "the doctrine of stare decisis must not be so narrowly pursued that the law is forever encased in a straight jacket." *Id.* (internal quotation marks omitted). Given the above discussion, the court concludes that compelling reasons exist to expand the protections of Nevada's Double Jeopardy Clause beyond *Kennedy*.

Supreme Court
OF
Nevada

(O) 1947A

causes prejudice to the defendant which cannot be cured by means short of a mistrial.

In analyzing whether double jeopardy will attach under this approach, the court finds the test set forth in *Pool* to be instructive, and adopts it today. Accordingly, when evaluating a double jeopardy claim following a defendant's motion for a mistrial, courts should consider whether:

> 1. Mistrial is granted because of improper conduct or actions by the prosecutor; and

> 2. such conduct is not merely the result of legal error, negligence, mistake, or insignificant impropriety, but, taken as a whole, amounts to intentional conduct which the prosecutor knows to be improper and prejudicial, and which he pursues for any improper purpose with indifference to a significant resulting danger of mistrial . . . ; and

> 3. the conduct causes prejudice to the defendant which cannot be cured by means short of a mistrial.[8]

---

[8]We note that *Pool* also indicates that this test applies to prosecutorial misconduct that results in reversal on appeal. 677 P.2d at 271-72. Under the facts currently before the court, we need not reach the issue of whether double jeopardy may bar reprosecution in circumstances other than mistrial. Given that the purpose of the double jeopardy clause is not to punish prosecutorial misconduct, but ensure that a defendant chooses when to go to trial, a defendant who chooses not to litigate any alleged prosecutorial misconduct at the trial level presents a less compelling argument that double jeopardy bars retrial. Nonetheless, even courts applying the more restrictive *Kennedy* standard may find prosecutorial misconduct to be so severe that due process mandates dismissal. *See, e.g., United States v. Lewis*, 368 F.3d 1102, 1107 (2004) (noting that a court always retains the inherent power to dismiss a case for due process violations).

*Pool*, 677 P.2d at 271-72; *see also People v. Dawson*, 397 N.W.2d 277, 282 (Mich. Ct. App. 1986) (adopting the Arizona test). With respect to the second prong of this test, we first note that the question of whether a prosecutor "knows" or "intends" his conduct to be improper and prejudicial should generally be measured by objective factors. As clarified by the court in *Pool*, these factors may include

> the situation in which the prosecutor found himself, the evidence of actual knowledge and intent and any other factors which may give rise to an appropriate inference or conclusion. [A trial court] may also consider the prosecutor's own explanations of his "knowledge" and "intent" to the extent that such explanation can be given credence in light of the minimum requirements expected of all lawyers.

*Pool*, 677 P.2d at 271 n.9.

In addition, we reiterate that the misconduct at issue must amount to more than "insignificant impropriety." The Arizona Supreme Court has noted that there is "an important distinction between simple prosecutorial error, such as an isolated misstatement or loss of temper, and misconduct so egregious that it raises concerns over the integrity and fundamental fairness of the trial itself." *State v. Minnitt*, 55 P.3d 774, 781 (Ariz. 2002) (citing *Pool*, 677 P.2d at 268-70).

Finally, with respect to the third prong of this test, we note that the district court has multiple measures at its disposal to remedy prosecutorial misconduct. These may include the grant of a continuance to review newly produced evidence, various sanctions against the prosecutor, or the issuance of curative jury instructions. Double jeopardy

will attach only when egregious and intentional prosecutorial misconduct has truly necessitated the grant of a mistrial.[9]

*Under the facts of this case, double jeopardy bars reprosecution*

At the evidentiary hearing on the double jeopardy motion, counsel for ACS testified that he had provided the Las Vegas Metropolitan Police Department (LVMPD) with a disc of documents that he believed demonstrated that ACS had worked diligently to perform its contractual obligations. Detective Robert Whitely generally remembered receiving the disc, and testified that the documents had been printed into a notebook by another LVMPD employee. While he did not specifically recall tendering the notebook to the district attorney's office, Detective Whitely stated that, based on the documents received from ACS, he and Sergeant Michael Ford had recommended to the district attorney's office that no charges be made with respect to ACS.[10]

Sergeant Ford more specifically testified that the documents tendered on the disc from ACS would have been submitted to the district attorney's office with his initial report recommending that the conduct involving ACS not be charged. Prior to the grand jury proceedings, Sergeant Ford recalled having at least one conversation with Deputy

---

[9]It is curious that the dissent characterizes this approach as "overruling" *Melchor-Gloria*. While our opinion expands the protections of Nevada's Double Jeopardy Clause, we affirm *Melchor-Gloria* to the extent it stands for the proposition that double jeopardy bars retrial when a prosecutor has intentionally goaded a defendant into requesting a mistrial.

[10]It is unclear how the dissent finds this testimony of Detective Whitely to "squarely" support a finding of non-intentionality.

District Attorney Scott Mitchell where it was indicated that there was evidence that ACS had performed work at UMC. After the grand jury returned an indictment containing charges related to ACS, Sergeant Ford further testified he was "surprised." As a result, Sergeant Ford had *another* conversation with Mitchell about the decision to pursue charges against ACS, especially in light of the investigation and exculpatory documents. Sergeant Ford also provided Mitchell with a second copy of the documents in question. Mitchell did not testify at the evidentiary hearing. Indeed, no member of the prosecution team testified under oath.

As mentioned above, the parties appeared to believe that the standard governing this case was the "manifest necessity" standard discussed in *Hylton v. Eighth Judicial Dist. Court*, which relates to those instances in which the State requests a mistrial. 103 Nev. 418, 422-23, 743 P.2d 622, 625 (1987). The district court did not specifically make a finding pursuant to *Melchor-Gloria* or *Kennedy*. However, in denying Thomas's motion to dismiss pursuant to the Double Jeopardy Clause, the court found that there was not an intentional act by the district attorney to withhold the evidence. Based on the evidence presented at the hearing, we conclude that this finding was clearly erroneous. Further, given the State's failure to present any evidentiary testimony in defense against Thomas's motion, we conclude that the record is sufficient to determine that under the standard announced today, double jeopardy bars reprosecution.[11]

---

[11]The dissent suggests that this matter should be remanded to the district court because, under the test announced today, this presents an inquiry that is "highly fact-specific." Of note, the district court held a full

*continued on next page . . .*

SUPREME COURT
OF
NEVADA

(O) 1947A

16

In this, we note that testimony presented at the evidentiary hearing indicated that the prosecution had been provided with the documents at issue. Both Detective Whitely and Sergeant Ford testified that they had conversations with Mitchell in which they recommended against charging any misconduct with respect to ACS, based on the documentation they provided. Based on this testimony, the district court found that the documents at issue were both exculpatory and had been provided to Mitchell. Going further, we note that this testimony also clearly demonstrates that the prosecution was aware of the potential importance of the documents.

While, at the time of the initial mistrial motion, Mitchell made several statements that he did not intentionally withhold the documents, neither Mitchell nor any other employee of the district attorney's office testified at the evidentiary hearing. The sworn testimony by Detective Whitely and Sergeant Ford directly contradicts Mitchell's prior unsworn assertions. Therefore, under these unique circumstances, a negative inference arises from Mitchell's failure to testify. Given the uncontroverted testimony by Detective Whitely and Sergeant Ford indicating that Mitchell was aware of the exculpatory documents, the

_... continued_

evidentiary hearing, indicating that this court has all facts necessary to apply the _Pool_ analysis. Notably, in the appropriate circumstances, this court has found remand to be unnecessary, even when announcing a new rule of law. _See, e.g., McConnell v. State_, 120 Nev. 1043, 1062, 102 P.3d 606, 620 (2004). This case has been pending since 2008. No reason exists to further continue this matter.

district court's conclusion that Mitchell's actions were unintentional was not supported by substantial evidence.

Under the three-part test adopted by the court today, the record clearly reflects that the mistrial was granted due to Mitchell's improper conduct.[12] When the issue of the withheld documents first arose, it appears that the district court initially considered allowing trial to proceed, and allowing the defense to recall any witnesses it felt necessary. Ultimately, given that the mistrial motion was not fully litigated until the tenth day of trial, coupled with the exculpatory nature and volume of documents disclosed, and the number of witnesses that had already testified, the district court concluded that no remedy short of a mistrial would cure the prejudice to Thomas. This court agrees. *See, e.g., United States v. Miller*, 529 F.2d 1125, 1128 (1976) (noting that late disclosure may cause prejudice to the extent that a defendant is "prevented from receiving a constitutionally guaranteed fair trial"). Accordingly, the record clearly demonstrates that the first and third components of *Pool* are satisfied.

---

[12]During the proceedings below, both the parties and the district court discussed the late disclosure as a violation of *Brady v. Maryland*, 373 U.S. 83 (1963). As noted by the United States Supreme Court, "the term '*Brady* violation' is sometimes used to refer to any breach of the broad obligation to disclose exculpatory evidence." *Strickler v. Greene*, 527 U.S. 263, 281 (1999). Nonetheless, a "true" *Brady* violation occurs only when a court determines that "the suppressed evidence would have produced a different verdict." *Id.* Accordingly, it is not practicable to analyze a *Brady* violation prior to entry of a verdict. *See, e.g., United States v. McPartlin*, 595 F.2d 1321, 1346 (7th Cir. 1979). Therefore, we have framed our discussion of the issues in this case in terms of late disclosure, rather than *Brady*.

Supreme Court
of
Nevada

(O) 1947A

As discussed above, the second prong of *Pool*, regarding the intent of the prosecutor and the nature of the misconduct at issue, requires the court to consider "the situation in which the prosecutor found himself, the evidence of actual knowledge and intent, and any other factors which may give rise to an appropriate inference or conclusion." 677 P.2d at 271 n.9. A court may also consider the prosecutor's own explanation. *Id.* However, in this case, the State offered no explanation at the evidentiary hearing for its failure to disclose the documents. Perhaps more disturbingly, when the issue of the withheld binder of documents arose during trial, Mitchell repeatedly informed the district court that he had never seen the documents before. Mitchell later agreed with suggestions by the district court that LVMPD had the documents, and had likely failed to turn them over to the district attorney's office. These statements were directly contradicted by the testimony presented at the evidentiary hearing, which established that Mitchell had been provided with the documents on multiple occasions, and informed of their contents. This strongly indicates that the failure by the prosecution to disclose the documents was intentional.

Given the facts of this situation, we cannot say that the intentional withholding of these documents was minor error. Rather, when the State has withheld evidence "essential to the question of reasonable doubt," that conduct "raise[s] grave questions concerning the integrity of the criminal justice system." *Milke v. Mroz*, 339 P.3d 659, 667 (Ariz. Ct. App. 2014). Given the State's complete failure to introduce any evidence to dispute that Mitchell intentionally withheld the documents to improve his chances of securing a conviction, including the failure to call

Mitchell as a witness, we conclude that Thomas presented sufficient evidence to satisfy the second prong of *Pool*.

Because Thomas presented sufficient evidence to satisfy all three prongs of the inquiry set forth in *Pool*, double jeopardy bars his reprosecution.

*Double jeopardy bars reprosecution on all charged counts*

As discussed above, the district court concluded that even in the event double jeopardy barred reprosecution of Thomas, it had only "attached" to the count of theft related to the contract with ACS. We disagree.

It is well settled that double jeopardy attaches when the jury is sworn. *Hanley v. State*, 83 Nev. 461, 465, 434 P.2d 440, 442 (1967). As established by the United States Supreme Court, the protections of the Double Jeopardy Clause arise from the fact that multiple prosecutions seriously disrupt a defendant's personal life during trial, create a potential for governmental harassment of the defendant, and enhance the likelihood that an innocent defendant may be convicted. *See Arizona v. Washington*, 434 U.S. 497, 503-04 (1978) (noting that a second prosecution "increases the financial and emotional burden on the accused, [and] prolongs the period in which he [or she] is stigmatized by an unresolved accusation of wrongdoing"); *see also United States v. DiFrancesco*, 449 U.S. 117, 128 (1980) (noting that reprosecution allows the government to "gain [] advantage from what it learns at the first trial about the strengths of the defense" and its own weaknesses). Similarly, the interest in the finality of judgments contemplates "the importance to the defendant of being able, once and for all, to conclude his confrontation with society." *United States v. Jorn*, 400 U.S. 470, 486 (1971).

This court is aware of no controlling or persuasive authority in which a court has concluded that double jeopardy may bar reprosecution on a single charged count. Rather, a review of the interests protected by the Double Jeopardy Clause strongly suggests that when a case ends in mistrial, double jeopardy will bar reprosecution on either all counts or on none. To rule otherwise would deprive a defendant, through no fault of his own, of the important right to confront the charges against him in his initial trial.

In this case, a jury was initially sworn at the first trial in 2010, in which Thomas was charged with the same offenses as in the current case. Therefore, we conclude that double jeopardy attached to all counts when the jury was sworn, and bars reprosecution of Thomas on all counts.[13]

## CONCLUSION

All evidence before the district court in this case suggests that the prosecutor intentionally and improperly withheld exculpatory documents. This conduct was egregious, and caused prejudice to Thomas which could not be cured by means short of a mistrial. Therefore, double jeopardy bars reprosecution of Thomas on all counts.

Accordingly, we grant Thomas's petition, and direct the clerk of this court to issue a writ of mandamus, instructing the district court to

---

[13]Because we conclude that the Double Jeopardy Clause bars reprosecution of Thomas on all counts, we do not reach the question of whether the district court had authority to rule on Thomas's renewed motion to dismiss for vagueness.

vacate its September 29, 2015, order denying the motion to dismiss and enter an order granting dismissal of the indictment.

_____, J.
Stiglich

We concur:

_____, C.J.
Cherry

_____, J.
Hardesty

_____, J.
Parraguirre

SUPREME COURT
OF
NEVADA

(O) 1947A

GIBBONS, J., concurring:

I concur with the majority in result only.

_____, J.
Gibbons

SUPREME COURT
OF
NEVADA

(O) 1947A

PICKERING, J., dissenting:

The district court granted the defense motion for a mistrial but ordered a retrial, not dismissal. It found that the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), by not providing the defense with a compact disc of documents having exculpatory value as to two of the ten criminal charges against Thomas; that the State had overlooked the disc, not hidden it; and that, with no intentional misconduct by the State, retrial did not offend double jeopardy.

The majority grants Thomas's petition for a writ prohibiting the district court from retrying him and directs dismissal of all charges against him. To reach this result, the majority overturns 35 years of settled law and embraces a state-constitution-based double-jeopardy test all federal and most state courts have rejected as unworkable and unsound. Questions of intent are quintessentially for the district judge, who sees firsthand what an appellate court only reads about. Despite this, and despite the district judge's familiarity with the facts, having presided over the aborted trial and the evidentiary hearing that followed, the majority deems "clearly erroneous" the district court's finding that the State did not intentionally suppress the compact disc or the documents it contained. The court then applies its new double-jeopardy test post hoc to an evidentiary hearing the district court and the parties conducted under prior law and, faulting the State for its lack of prescience, dismisses the case for a failure of essential proof under the court's new test.

The new double-jeopardy test the majority adopts was tried in Texas and failed, creating havoc and uncertainty. I fear it will fail Nevada too. I also do not subscribe to replacing existing law with new law, then applying the new law at the appellate level where, as here, the new law

involves fact-finding not undertaken in district court. As I support neither the new rule of law announced by the majority, nor the procedure followed in adopting and implementing it, I respectfully dissent.

I.

A.

The double jeopardy clauses of the United States and Nevada Constitutions forbid the government from trying a person twice for the same crime. *See* U.S. Const. amend. V ("nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb"); Nev. Const. art. I § 8(1) ("[n]o person shall be subject to be twice put in jeopardy for the same offense"). These clauses protect both a defendant's right to be secure in a judgment of acquittal—from which the State may not appeal—and his "valued right to have his guilt or innocence determined before the first trier of fact." *United States v. Scott*, 437 U.S. 82, 93 (1978). The latter right is not absolute; it does not guarantee a defendant that the State will always "vindicate its societal interest in the enforcement of criminal laws in one proceeding." *Oregon v. Kennedy*, 456 U.S. 667, 672 (1982). A defendant who successfully appeals his conviction, for example, receives a new trial, not an acquittal. *United States v. Tateo*, 377 U.S. 463, 465 (1964) ("The principle that [the Double Jeopardy Clause] does not preclude the Government's retrying a defendant whose conviction is set aside because of an error in the proceedings leading to conviction is a well-established part of our constitutional jurisprudence."); *Collier v. State*, 103 Nev. 563, 565, 747 P.2d 225, 226 (1987) ("It has long been held that the double jeopardy clause does not bar retrial when a conviction is reversed on appeal."). Similarly, when a defendant's first jury deadlocks, double jeopardy yields to the "manifest necessity" of a mistrial and subsequent retrial. *United States v. Perez*, 9 Wheat. 579, 580 (1824); *Glover v. Eighth*

*Judicial Dist. Court*, 125 Nev. 691, 702, 220 P.3d 684, 692 (2009) ("A deadlocked jury is the classic example of the 'manifest necessity' for mistrial before final verdict that will permit retrial without offense to a defendant's double jeopardy rights) (citing *Logan v. State*, 144 U.S. 263 (1982), *abrogated on other grounds by Witherspoon v. Illinois*, 391 U.S. 510 (1968)).

"If the law were otherwise, 'the purpose of law to protect society from those guilty of crimes frequently would be frustrated by denying courts power to put the defendant to trial again.'" *Kennedy*, 456 U.S. at 667 (quoting *Wade v. Hunter*, 336 U.S. 684, 689 (1949)). "It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction." *Tateo*, 377 U.S. at 466.

### B.

Much as an appellate reversal permits retrial, a defendant who successfully moves for a mistrial may be retried consistent with double jeopardy, the motion for mistrial being deemed a consent to retrial. *Kennedy*, 456 U.S. at 676 ("A defendant's motion for a mistrial constitutes a deliberate election on his part to forgo his valued right to have his guilt or innocence determined before the first trier of fact.") (quotations omitted). But what if the State, seeing that it is losing, deliberately blunders, trying to provoke the defendant into moving for a mistrial so it can start over? An exception to the defense-initiated-mistrial rule exists where, seeing that the case is going badly for it, the government decides to throw the case by committing error designed to "goad" the defendant into requesting a mistrial. *United States v. Dinitz*, 424 U.S. 600, 611 (1976).

Double jeopardy protects the defendant thus goaded, and his motion for mistrial does not constitute consent to retrial.

In *Oregon v. Kennedy*, the Supreme Court considered the limits of the goaded-mistrial exception to the defense-initiated mistrial rule, specifically, whether it should "broaden the test from one of *intent* to provoke a motion for a mistrial to a more generalized standard of 'bad faith conduct' or 'harassment' on the part of the judge or prosecutor." 456 U.S. at 674. After examining prior case law, the Supreme Court rejected the broader exception as "offer[ing] virtually no standards" and unrealistic:

> Every act on the part of a rational prosecutor during a trial is designed to "prejudice" the defendant by placing before the judge or jury evidence leading to a finding of his guilt. Given the complexity of the rules of evidence, it will be a rare trial of any complexity in which some proffered evidence by the prosecutor or by the defendant's attorney will not be found objectionable by the trial court.

*Id.* at 674-75.

Motions for mistrial, like appeals, safeguard the fairness of the trial process. To adopt a rule that prosecutorial error serious enough to result in a mistrial automatically bars retrial is not only inconsistent with the rule that appellate reversal yields a new trial, not an acquittal, it would leave trial judges reluctant to grant otherwise appropriate motions for mistrial. *Id.* at 676 ("Knowing that the granting of the defendant's motion for mistrial would all but inevitably bring with it an attempt to bar a second trial on grounds of double jeopardy, the judge presiding over the first trial might well be more loath to grant a defendant's motion for mistrial."). For these reasons, *Kennedy* reaffirmed the goaded-mistrial

exception to the defense-initiated mistrial rule: "Only where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion." *Id.*

## C.

In *Melchor-Gloria v. State*, 99 Nev. 174, 178, 660 P.2d 109, 111 (1983), this court considered whether "the Double Jeopardy Clause of the United States or Nevada Constitutions bars [a defendant's] retrial" where, as here, the first trial ended in a mistrial at the defendant's request. We did not differentiate between the similarly worded double jeopardy clauses in the United States and Nevada Constitutions, resolving both *Melchor-Gloria*'s federal and state constitutional challenges under *Oregon v. Kennedy*'s "goaded mistrial" test:

> As a general rule, a defendant's motion for, or consent to, a mistrial removes any double jeopardy bar to reprosecution. . . . [P]rosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion, does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause. . . . *The dispositive question is . . . whether the prosecutor's conduct . . .* constitutes "overreaching" or "harassment" *intended to goad [a defendant] into moving for a mistrial.*

*Melchor-Gloria*, 99 Nev. at 178, 660 P.2d at 111-12 (emphasis added) (citations omitted); *Benson v. State*, 111 Nev. 692, 695, 895 P.2d 1323, 1326 (1995) (recognizing that *Melchor-Gloria* adopts *Oregon v. Kennedy*'s "goaded mistrial" rule for "cases where prosecutorial misconduct led a defendant to seek a mistrial"); *see Collier*, 103 Nev. at 566, 747 P.2d at 227

(affirming order denying double-jeopardy-based motion to dismiss where the prosecutor engaged in "egregious" misconduct but did so to win, not "to goad the defense into moving for a mistrial").[1]

## D.

Under *Melchor-Gloria* (and *Oregon v. Kennedy*), Thomas's double-jeopardy challenge fails. Thomas moved for a mistrial when he learned from a third party, a week into trial, that the State had not provided him discovery of a disc containing documents having exculpatory value with respect to two of the ten criminal charges against him. The State's obligation to provide Thomas with the compact disc arose, and was breached, before trial began. It makes no sense—and neither Thomas nor the majority suggest—that the State withheld the disc before trial so that, when Thomas learned about the disc's existence from a third party during trial, he would move for a mistrial. *Cf. United States v. Washington*, 198 F.3d 721, 725 (8th Cir. 1999) (affirming denial of a defendant's double-jeopardy-based motion to dismiss where the errors underlying the mistrial motion were discovery errors that occurred prior to trial: It is "highly unlikely the government manufactured pre-trial discovery errors to halt a

---

[1]I agree with my colleagues that Thomas's reliance on *Hylton v. Eighth Judicial District Court*, 103 Nev. 418, 743 P.2d 622 (1987), is misplaced. A defendant may be retried after a mistrial in two instances: (1) if he consented to the mistrial; or (2) if manifest necessity required the mistrial as, for example, where the jury deadlocks. *Glover*, 125 Nev. at 709, 220 P.3d at 696 (citing *Arizona v. Washington*, 434 U.S. 497, 505 (1978)). While the defendant in *Hylton* did not oppose the prosecutor's mistrial motion, he did not affirmatively move for a mistrial, as Thomas did here. *Hylton* is a "manifest necessity" case, not a defense-initiated mistrial case.

trial that was not going well."). Even assuming, as the majority holds, that the State deliberately withheld the disc, logic and evidence say it did so to enhance the likelihood of conviction on the ACS counts, not to goad Thomas into moving for a mistrial. *See United States v. Coleman*, 862 F.2d 455, 458 (3d Cir. 1988) ("[A]ssuming arguendo a number of *Brady* violations prior to the first trial, the double jeopardy clause [still] is not implicated. The prosecutor's withholding of exculpatory evidence from the defendant may only be characterized as an overzealous effort to gain a conviction from the first jury and not as an attempt to subvert [the defendant's] valued right" to have the first jury decide his case.) (internal quotations omitted). The fact that the government blundered and "the blunder precipitates a successful motion for mistrial does not bar a retrial" unless, in committing the blunder, the prosecutor "is trying to abort the trial," of which there is no evidence here. *United States v. Oseni*, 996 F.2d 186, 188 (7th Cir. 1993).

The State's failure to turn over material, exculpatory evidence, while it may constitute a due process violation under *Brady v. Maryland*, does not constitute a double-jeopardy violation under *Melchor-Gloria* and *Kennedy*. Due process does not seek "punishment of society for misdeeds of a prosecutor but avoidance of an unfair trial to the accused." *Brady*, 373 U.S. at 87. Thus, while dismissal has been ordered in extreme cases as a sanction against the government for egregious misconduct, including failing to afford discovery, *see* 6 Wayne R. LaFave et al. *Criminal Procedure* § 24.3(a), at 413 n.14 (4th ed. 2015), the remedy for a *Brady* violation is a new trial, as the district court correctly held. *Id.* In holding otherwise, and dismissing the charges against Thomas, the majority conflates due process, and *Brady*, with double jeopardy. *See Coleman*,

Supreme Court
of
Nevada

(O) 1947A

7

862 F.2d at 458-59 (rejecting argument that a *Brady* violation required dismissal of charges and noting, "Unlike the double jeopardy analysis, which places a premium upon the defendant's right to one prosecution, due process simply requires that the defendant be treated fairly."); *United States v. Lewis*, 368 F.3d 1102, 1107 (9th Cir. 2004) (government's alleged *Brady* violations at first trial did not establish a double jeopardy bar to retrial); *Green v. State*, 380 S.W.3d 368, 374-75 (Ark. 2011) ("[o]ur law is well settled that the remedy for a *Brady* violation is a new trial"; "prosecutorial misconduct motivated by a desire to obtain a conviction and not by a desire to provoke the defendant into moving for a mistrial may be grounds for a mistrial but it does not preclude retrial of the case" as a matter of double jeopardy"); *see also Lay v. State*, 116 Nev. 1185, 1199-1200, 14 P.3d 1256, 1266 (2000) (reversing judgment of conviction and remanding for a new trial based on the prosecution's *Brady* violation).

## II.

Today's majority overrules *Melchor-Gloria*. It replaces the goaded-mistrial test we adopted from *Oregon v. Kennedy* with the expansive criteria the Arizona Supreme Court developed in *Pool v. Superior Court*, 677 P.2d 261, 271 (Ariz. 1984), as appropriate for interpreting the Arizona Constitution's double jeopardy clause. Majority, *ante*, at 12 ("when evaluating a double jeopardy claim following a defendant's motion for a mistrial, [Nevada] courts should consider whether: (1) mistrial is granted because of improper conduct or actions by the prosecutor; (2) such conduct is not merely the result of legal error, negligence, mistake, or insignificant impropriety, but, taken as a whole, amounts to intentional conduct which the prosecutor knows to be improper and prejudicial, and which he pursues for any improper purpose with indifference to a significant resulting danger of mistrial . . . [or

reversal];[2] and (3) the conduct causes prejudice to the defendant which cannot be cured by means short of a mistrial") (quoting *Pool*, 677 P.2d at 271-72). But courts do not grant mistrials or reverse judgments of conviction for harmless errors. Though formulated as a three-factor test, the law Arizona's *Pool* and now Nevada's *Thomas* state comes down to this: Prosecutorial error serious enough to require mistrial or reversal violates Nevada's double jeopardy clause and will require dismissal of charges if engaged in intentionally or with reckless disregard of the mistrial or reversal that might result.

The majority suggests its decision does not overrule *Melchor-Gloria* but this is incorrect. *Melchor-Gloria* affirmed denial of a double jeopardy challenge to a retrial, applying *Oregon v. Kennedy*. If the court had adopted *Pool*, a different analysis would have been required and Melchor-Gloria might have gone free. *Melchor-Gloria* may survive *Pool/Thomas* to the extent that, depicting the latter's expansive test as a Venn diagram, a small corner of the map covers a goaded mistrial. But *Pool/Thomas* disavows, and hence overrules, the goaded-mistrial test *Melchor-Gloria* adopted from *Oregon v. Kennedy*, which limits a

---

[2]The majority omits the bracketed "or reversal" phrase from *Pool*. From its later discussion, the omission appears stylistic, not substantive, and that, under *Pool/Thomas*, a defendant who does not move for a mistrial but successfully appeals a judgment of conviction based on prosecutorial misconduct may thereafter secure, as such a defendant may in Arizona, dismissal of the charges under the state constitution's double jeopardy clause. *See State v. Jorgenson*, 10 P.3d 1177, 1180 (Ariz. 2000) (affirming dismissal of first-degree murder charges following reversal and remand of judgment of conviction based on intentional and egregious prosecutorial misconduct).

defendant's double jeopardy right to a dismissal following a defense-initiated mistrial to motions for mistrial the State goads the defendant into making.

Stare decisis requires us to follow existing case law unless "compelling" reasons exist for overruling it. *Miller v. Burk*, 124 Nev. 579, 597, 188 P.3d 1112, 1124 (2008). "Mere disagreement" will not do. *Id.* A prior holding must have proven "badly reasoned" or "unworkable" before we will destabilize our case law by overruling it. *See State v. Lloyd*, 129 Nev. 739, 750, 312 P.3d 467, 474 (2013) (overruling *State v. Harnisch*, 114 Nev. 225, 954 P.2d 1180 (1998), because the confusion that decision spawned proved it "unworkable").

The majority largely repudiates these self-regulatory rules. Instead of examining Nevada's experience with *Oregon v. Kennedy*, as adopted in *Melchor-Gloria*, the majority looks outside Nevada to support revising our law, representing that "a number" of states have "adopted approaches pursuant to their respective state constitutions" that reject *Kennedy*'s "goaded mistrial" test in favor of other less "narrow," more "fully protective" tests. Majority opinion, *ante*, at 1, 9. But this overstates matters considerably. In the 35 years since the Supreme Court decided *Oregon v. Kennedy*, only seven states have rejected its "goaded mistrial" test in favor of a more expansive reading of the double jeopardy clauses in their state constitutions. *See Pool*, 677 P.2d at 271; *People v. Batts*, 68 P.3d 357, 360 (Cal. 2003); *State v. Rogan*, 984 P.2d 1231, 1242-44 (Haw. 1999); *State v. Breit*, 930 P.2d 792, 803 (N.M. 1996); *State v. Kennedy*, 666 P.2d 1316, 1326 (Ore. 1983); *Commonwealth v. Smith*, 615 A.2d 321, 325 (Pa. 1992); *Bauder v. Texas*, 921 S.W.2d 696, 699 (Tex. Crim. App. 1996), *overruled by Ex parte Lewis*, 219 S.W.3d 335, 337 (Tex. Crim. App. 2007).

SUPREME COURT
OF
NEVADA

(O) 1947A

And that number is now down to six, since Texas has concluded that its state-specific test "should be overruled and that the proper rule under the Texas Constitution is the [goaded-mistrial] rule articulated by the United States Supreme Court in *Oregon v. Kennedy*." *Ex parte Lewis*, 219 S.W.3d at 337.[3]

Texas's experience holds a cautionary lesson for our court. In *Lewis*, the Texas court of criminal appeals overruled the decision it had rendered ten years earlier in *Bauder*. *Id.* Similar to *Pool/Thomas*, *Bauder* rejected *Oregon v. Kennedy*'s goaded-mistrial test as too narrow for purposes of the Texas Constitution's double jeopardy clause:

> . . . when a prosecuting attorney, believing that he cannot obtain a conviction under the circumstances with which he is confronted, and

---

[3]According to LaFave, *supra*, § 25.2(b), at 795, "Several states' courts, relying on their state constitutions, have adopted standards for overreaching that barred retrial even in the absence of proof that the prosecution intended to provoke a motion for mistrial. Most . . . have followed the federal [*Oregon v. Kennedy*] standard." *See Tomlin v. State*, 695 So. 2d 157, 165 (Ala. 1996); *Green*, 380 S.W. at 374-75; *State v. Michael J.*, 875 A.2d 510, 534-35 (Conn. 2005); *Dinning v. State*, 485 S.E.2d 464, 465-66 (Ga. 1997); *State v. Morton*, 153 P.3d 532, 537-38 (Kan. 2007); *State v. Chase*, 754 A.2d 961, 963-64 (Me. 2000); *State v. DeMarco*, 511 A.2d 1251, 1253-54 (N.J. Sup. 1986). As support for adopting *Pool*, the majority cites three cases from Minnesota, Michigan, and Washington in which their supreme courts acknowledged but did not adopt a more expansive state-constitutional standard than *Oregon v. Kennedy*. Majority opinion, *ante*, at 10, n.5 (citing *State v. Fuller*, 374 N.W.2d 722, 726 (Minn. 1985), *People v. Dawson*, 427 N.W.2d 886, 897 (Mich. 1988), and *State v. Hopson*, 778 P.2d 104, 1019 (Wash. 1989)). Given that these cases were decided 30 years ago, yet these states remain in the *Oregon v. Kennedy* majority, I read them as acknowledging the parties' arguments, not as indicating any of these states is about to adopt *Pool*.

 

given the admissible evidence then at his disposal, deliberately offers objectionable evidence which he believes will materially improve his chances of obtaining a conviction, and the law considers the prejudicial effect of such objectionable evidence to be incurable even by a firm judicial admonishment to the jury, it seems to us that the prosecutor's specific intent, whether to cause a mistrial or to produce a necessarily unfair trial or simply to improve his own position in the case, is irrelevant. In our view, putting a defendant to this choice, even recklessly, is constitutionally indistinguishable from deliberately forcing him to choose a mistrial.

*Bauder*, 921 S.W.2d at 699. *Bauder* held that, under the Texas Constitution, "a successive prosecution is jeopardy barred after declaration of a mistrial at the defendant's request, not only when the objectionable conduct of the prosecutor was intended to induce a motion for mistrial, but also when the prosecutor was aware but consciously disregarded the risk that an objectionable event for which he was responsible would require a mistrial at the defendant's request." *Id.*

Like Nevada, Texas endorses stare decisis and holds a "strong preference for adhering to past decisions." *Lewis*, 219 S.W.2d at 338. Despite this staunch preference, *Lewis* held that "[t]he *Bauder* opinion was flawed in [so many] respects" it needed to be overruled. *Id.* at 371. The *Lewis* court did so, first, because history does not support *Bauder*'s view of double jeopardy. *Lewis*, 219 S.W.3d at 354 (noting that early "cases applying double jeopardy protection to the mistrial setting uniformly held that a defendant could be tried anew if he had consented to the mistrial" by moving for it). Second, Lewis recognizes that *Bauder* is logically and doctrinally infirm because it conflates due process with double jeopardy. *See id.* at 353 ("the *Bauder* standard goes awry by

operating as a penal sanction against the prosecution rather than as a shield against a prosecutor's attempt to abort a trial to prevent an impending acquittal").

> The question, for double jeopardy purposes, is not whether the defendant's trial was "fair" [a due process standard] but whether requesting a mistrial was ultimately his decision [a double jeopardy standard]. . . . Only when the prosecutor intends to provoke the defendant's mistrial motion can it be said that the prosecutor, rather than the defendant, has exercised primary control over the decision to seek the trial' termination.

*Id.* at 358-59.

Finally, *Lewis* recounts the havoc *Bauder* wrought as Texas courts struggled to define when prosecutorial misconduct was egregious enough to require dismissal, as opposed to a new trial, following the grant of a defendant's motion for mistrial. *Id.* at 370. The problem, the *Lewis* court observes, is "that [our] Court has never really been able to describe adequately what it believes double jeopardy should protect that is not already protected under *Oregon v. Kennedy.*" *Id.*

Similar to the majority's assurance that its new *Pool/Thomas* test will not turn every defense-initiated, prosecutorial-error-based mistrial motion into a double-jeopardy challenge, *Bauder* purported to limit its holding to those cases where the prosecutor's misconduct deprived the defendant of his right to proceed to verdict before the first jury sworn, while recognizing errors occur in trials that can and do result in mistrials and reversals on appeals followed by retrials. This goal proved unachievable.

> The problem is that the refinement never seems to end. If we continue down the *Bauder* path, we must either accept at some point that some

defendants who are not entitled to a double jeopardy acquittal will nevertheless obtain one under the *Bauder* standard, or we must continually refine the standard to reach for that elusive unarticulated ideal—overturning every grant of relief under *Bauder* along the way except on the rare occasion when relief would also be supported by *Oregon v. Kennedy*. The simple explanation for the never-ending path toward this "separate" state constitutional ideal is that it does not exist, because the real ideal is the *Oregon v. Kennedy* standard.

*Lewis*, 219 S.W.3d at 370-71; *see Michael J.*, 875 A.2d at 534 (endorsing *Oregon v. Kennedy* pre-*Lewis* after examining *Bauder*, *Pool*, and the other cases cited by the majority and concluding that the tests they adopt "lack the clarity to achieve an optimal balance between the defendant's double jeopardy rights and society's interest in enforcing its criminal laws").

## III.

*Pool* mirrors *Bauder* and trying to apply *Pool*'s three-factor standard to this case presages the same problems with indeterminacy and inconsistent results that led *Lewis* to overturn *Bauder*. The complete, 180-degree dichotomy between how the district court and my colleagues in the majority interpret the record facts illustrates the point perfectly.

## A.

Thomas was indicted on ten counts involving his dealings on behalf of his public-hospital employer with five different businesses. The lawyer representing one of the businesses, ACS, gave detectives a compact disc assembling materials showing that ACS in fact did work on the hospital contracts Thomas let to them and should not be criminally charged. ACS was not charged, but Thomas was.

A week into trial Thomas's lawyer spoke to ACS's lawyer and obtained the materials the latter had given the detectives—materials the defense represented to the court they had never seen before. Several days later, when the defense attempted to use the ACS materials to cross-examine a prosecution witness, the State objected based on hearsay and its objection was sustained. There followed a motion for a mistrial by Thomas based on the prosecution's failure to have provided the ACS materials to the defense earlier, which the State opposed but the district court granted. Some months later, Thomas filed a motion to dismiss asserting, among other challenges, that Nevada's double jeopardy clause required dismissal of all charges against him.

The district court convened an evidentiary hearing on Thomas's motion to dismiss. It heard testimony from the two detectives and the lawyer for ACS. The prosecutors and defense counsel also made representations on the record as officers of the court, first in connection with Thomas's motion for mistrial and later in presenting and opposing Thomas's motion to dismiss. The State acknowledged that it had had constructive possession of the ACS disc from the time ACS's lawyer gave it to the detectives but denied having deliberately withheld it and argued that, as the disc only related to the ACS charges, one of which had by then been dismissed for legal insufficiency, retrial should proceed on the charges that remained. The defense argued that, whether the prosecutors had the disc or didn't, the State's failure to turn over the disc was "inexcusable" because of the prejudice it caused Thomas. Of note, the defense did *not* ask the district court to find the government withheld the disc intentionally. Thus, during the evidentiary hearing on Thomas's motion to dismiss, the defense objected based on relevance when the State

Supreme Court
of
Nevada

(O) 1947A

15

asked one of the detectives if "there [was] anything you would not have provided or allowed [the defense] access of had he requested," maintaining that, "this isn't the issue. I'm not—I'm not alleging he hid something or didn't give me access. That's not the issue." Any suggestion this position was limited to the detectives as opposed to the prosecution denying the defense access to the ACS disc is repelled by the defense's acknowledgment in arguing the motion that, while "perhaps" the government's failure to provide discovery of the ACS disc "was intentional . . . I don't know that the record supports that and I—more importantly don't think you need to find that."

The district court denied Thomas's double-jeopardy-based motion to dismiss. It found that the ACS documents were exculpatory as to the two charges relating to Thomas's dealings with ACS but not as to the other eight charges against him. It further found that the prosecution did not intentionally withhold the documents from the defense. From the district court's finding that the State did not intentionally withhold the ACS disc, the implicit finding follows that the State did not engage in egregious misconduct or overreaching, much less any prescient plan to withhold documents pretrial to "goad" Thomas during trial into moving for a mistrial.

Unless "clearly erroneous," a district court's finding that the prosecutor did not act intentionally so as to provoke the defendant into waiving his double-jeopardy rights is a finding of fact that is binding on a reviewing court. *Collier*, 103 Nev. at 566, 747 P.2d at 227; *see Melchor-Gloria*, 99 Nev. at 178, 660 P.2d at 112 (an "express finding" by the district court that "there was no . . . . conduct on the part of the prosecutor which could be classified as bad faith" or "gross negligence" represented "findings

(O) 1947A

of fact which must be sustained on appeal unless clearly erroneous"). Findings of fact are clearly erroneous and subject to reversal when "there is no evidence in support of [them]." *Pink v. Busch*, 100 Nev. 684, 688, 691 P.2d 456, 459 (1984). And, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Hernandez v. New York*, 500 U.S. 352, 369 (1991) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985)).

The majority deems "clearly erroneous" the district court's finding that State did not intentionally withhold the ACS disc from Thomas. The record is not so one-sided the majority can fairly so hold. When the subject of the ACS disc emerged on the ninth day of trial, the defense and the prosecution expressed surprise. Without swearing either side's lawyer, the district court accepted both defense counsel's representation that he first learned about the disc on the seventh day of trial and the prosecutors' representation that they did not have or remember having the disc either. And, when the two detectives testified, one unequivocally stated that he did not give the disc to the prosecutor; the other could not recall but believed he did so as part of his recommendation against the State "charging ACS"—an ambiguous reference either to bringing charges against ACS or bringing ACS-related charges against Thomas. Both detectives testified, though, that had Thomas asked to inspect the evidence vault before trial, he would have been given free access and discovered the disc. If the prosecutors schemed to deliberately hide the disc from Thomas, this testimony makes no sense. While the record *could* support a finding that the prosecutors knew about and intentionally withheld the disc, lying to the court when they said they were as surprised by it as the defense, it *also* supports the district court's

opposite finding that, with all the documents and discovery in the case, the State simply overlooked the disc and, while the State committed a *Brady* violation by failing to provide it before trial, the violation was unintentional. Where, as here, the record supports alternative findings, the tie should go to the district judge, who presided over the trial and the evidentiary hearing, listened to the lawyers in real time, and observed their demeanor and that of the detectives and lawyer who testified.

### B.

Of greater concern, though, is how the double-jeopardy dismissal follows seemingly as a matter of course from the majority's finding that the prosecutors intentionally withheld the ACS disc. While *Pool/Thomas* is stated as a three-factor test, the first and third factors—"mistrial is granted because of improper conduct or actions by the prosecutor" and "the conduct causes prejudice to the defendant which cannot be cured by means short of a mistrial"—offer no guidelines beyond those generally applicable to motions for mistrial predicated on prosecutorial error. So the job of distinguishing between mistrials (or reversals, *see* note 2, *supra*) that permit retrial from those that do not falls to the second factor—was there "intentional conduct which the prosecutor knows to be improper and prejudicial, and which he pursues for any improper purpose with indifference to a significant resulting danger of mistrial or reversal"? Is winning an "improper purpose"? Assuming it is, once a prosecutor is found to have acted intentionally, it will be the rare case where "indifference to a significant resulting danger of mistrial or reversal" cannot be claimed, litigated, and found.

### C.

If *Pool/Thomas* requires more for dismissal than intentional error by the prosecution and prejudice to the defense, the majority should

SUPREME COURT
OF
NEVADA

(O) 1947A

18

remand to the district court so the parties can litigate—and the district court decide—whether retrial violates double jeopardy. Instead, the majority applies *Pool/Thomas* itself, faulting the State for not having called the prosecutors as witnesses and adversely inferring from its failure to have done so, a double jeopardy violation by the State under the newly announced *Pool/Thomas* test. But given *Melchor-Gloria* and *Kennedy*, neither the district court nor the parties had reason to anticipate, and did not apply, *Pool/Thomas*'s three-factor test. The majority justifies applying its new test itself instead of remanding by the number of years this prosecution has been pending. But delay comes with the territory of overthrowing decades of settled law; it does not justify an appellate court engaging in fact-finding. While I would avoid further delay by denying the writ based on *Melchor-Gloria*—except to the extent of directing the district court to resolve the remaining question raised by Thomas's motion to dismiss of whether the conduct charged constitutes a crime—applying the factors articulated in *Pool/Thomas* surely is a job in the first instance for the district court.

## IV.

I do not condone the prosecution's failure to have turned over the ACS materials to the defense. But I do not believe the remedy for the discovery, or *Brady*, violation in this case is dismissal of all charges under Nevada's double jeopardy clause, as opposed to a new trial.

I therefore dissent.

_____, J.
Pickering